## American Casualty Company v.
## Erie Insurance Group

*Robert E. Wayman,* for plaintiff.
*H. N. Rosenberg,* for defendant.

DOYLE, *J.,* September 12, 1977 — On October 2, 1972, a truck owned by Gengarella Contracting Company, Inc. (Gengarella) while being operated by its employe, John Yetsick, Jr. (Yetsick) struck an automobile being operated by Steve Kanish, Jr. (Kanish), an employe of Grant Oliver Corporation (Grant). Each of said employes was operating his vehicle within the course and scope of his employment on the business of his employer. As a result of the collision, Richard M. Hester (Hester), a passenger in the automobile being operated by

Kanish and also employed by Grant, and while within the course and scope of his employment and on the business of Grant, was injured. Grant, through its Workmen's Compensation indemnitor, American Casualty Company (American), paid compensation benefits to Hester in the total sum of $3,498.16, which included statutorily scheduled medical expenses and wages.

On July 19, 1973, at No. 720 October Term 1973, Hester filed in this court an action in trespass against Gengarella and Yetsick to recover money damages for the injuries he sustained, the consequent medical expenses he incurred, lost wages and pain, suffering and inconvenience. The medical expenses and lost wages claimed by Hester included the moneys for those same losses which were paid to him by Grant, through American. In that suit Gengarella and Yetsick were defended by Erie Insurance Group (Erie), their liability indemnitor.

During the course of the Hester-Gengarella-Yetsick litigation, Grant, through American, admittedly notified Hester, Gengarella and Erie of American's subrogation claim for workmen's compensation benefits paid to Hester. Nevertheless, Erie and Gengarella settled Hester's claim directly with Hester and his counsel for $7,500 and paid that amount to Hester and his counsel, all without the knowledge of Grant or American. In exchange for said payment Hester executed and delivered to Gengarella, Yetsick and Erie his written release dated August 30, 1976, specifically excepting therefrom "The Workmen's Compensation subrogated lien [sic] of [American] in the sum of $3,498.16 [which] is not included in this settlement." The release, prepared by Erie, is witnessed by counsel for Hester.

Having learned of the settlement, release and payment to Hester, Grant, through American, on March 2, 1977, at the captioned number, brought this trespass action against Erie and Hester, claiming an intentional violation by said defendants of their statutory subrogation rights and demanding $3,498.16 with interest, costs and counsel fees. As of this time the direction to the sheriff to serve Hester has been returned n.e.i. Erie, however, has appeared and, preliminarily objecting, asserts that the instant suit involves splitting of a cause of action, requires Erie to defend two law suits, each of which involves the same issues, the same cause of action and the same remedies and demands judgment in its favor in the instant suit.

American argues that it has the *first* right to *any* monies recovered by Hester from Gengarella and Yetsick because of the prior compensation payments made by it to Hester, ergo Hester's settlement with Erie and Yetsick without knowledge of American was an intentional deprivation of its subrogation rights. Erie, contrawise, argues that because American was specifically excepted from the settlement, its (American's) subrogation claim may be recovered in the original trespass action, ergo the present action should be dismissed.

The justiciable issue is whether vel non Pennsylvania law dictates that any moneys recovered by a plaintiff-employe from a third party tortfeasor must first be applied to satisfy workmen's compensation subrogation rights of the employer. If affirmatively answered, the settlement by Erie and Hester without American's knowledge would create a separate cause of action in American.

The Pennsylvania Workmen's Compensation Act, June 2, 1915, P. L. 736, sec. 319, as amended, 77 P. S. §671 (herein, the statute), provides:

"Where the compensable injury is caused in whole or in part by the act or omission of a third party, *the employer shall be subrogated* to the right of the employe, . . . against such third party to the extent of the compensation payable under this article by the employer; and . . . *[A]ny recovery against such third person* in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe." (Emphasis supplied).

Cooper v. Gettier, 27 D. & C. 429 (Fulton County, 1936), interpreting section 319 of the statute, holds that the statute contemplates that an employer is subrogated to *any* verdict recovered and that the verdict should not be cloven to determine how much, if anything, was included for loss of earnings. One cogent inference from Cooper would seem to indicate that courts do not seek to delaminate the verdict or settlement into its constituent parts, but merely determine whether the amount of the verdict is sufficient to satisfy the compensation payments made by the employer to the employe who recovers the verdict against the third party tortfeasor.

Yeager v. Heckman, 158 F. Supp. 933 (E.D. Pa. 1957), similarly interpreted the statute, holding that where the amount of the employe's verdict against the third party tortfeasor is equal to or less than the amount of the Workmen's Compensation benefits paid to the employe, the payor of the compensation benefits is entitled to the entire amount recovered.

The language of these two cases, while not characterizing the employers' right as a "lien" on the funds recovered from the third party tortfeasor, does indicate that the employer (or his indemnitor) recovers his claim "off the top" from any funds

recovered by the employe from the third party tortfeasor.

Curtis v. Simpson Chevrolet, 348 F. Supp. 1066 (E.D. Pa. 1972), characterizes the statutory subrogation right of the employer under the statute as a "lien" and holds that the "lien" is to be satisfied even where it would exhaust the amount recovered from the third party. The clear import of Curtis is that the employer is tantamount to a creditor with a perfected security interest and has first claim to any moneys recovered by the employe against the third party tortfeasor. Indeed, this would be the result in most American jurisdictions; a majority of our sister states having enacted workmen's compensation subrogation statutes which provide that the payor of compensation is *first* reimbursed for the amount of his expenditure as a *first* claim upon the proceeds of any recovery: 2A Larson, Workmen's Compensation Law §74.31.

To allow an injured employe to settle with the third party tortfeasor independently and without the consent of his employer and then resign his employer to pursue his subrogation claim with a then disinterested plaintiff is patently unfair. Indeed, in the instant case the employer cannot even discover the whereabouts of the now-disinterested plaintiff, attempted service of process upon Hester having been returned n.e.i. by the sheriff.

The proper interpretation of the statute, together with the judicial decisions interpreting it, compel a recognition of the employer's *first* right to *any* proceeds of settlement between the employe and the third party tortfeasor where the employer has previously paid the employe workmen's compensation benefits under the statute. Having provided

first succor to the injured employe, the employer's right to recover from the third party tortfeasor rises to a first lien on the funds recovered by the employe from the third party tortfeasor whom the employe asserts is legally liable for the injuries he sustained.

Therefore, the settlement and release between Hester and Erie and the payment to Hester to the exclusion of American generated an independent cause of action in American. Defendant Erie's preliminary objections will be dismissed in the action at No. GD 77-04570.

## ORDER

And now, September 12, 1977, the preliminary objections of Erie Insurance Group are dismissed.