**Noah CURTIS**

**v.**

**SIMPSON CHEVROLET and Broad Motors, Defendants.**

**Civ. A. No. 68–1222.**

United States District Court,
E. D. Pennsylvania,
Civil Division.

Sept. 27, 1972.

James E. Beasley, Philadelphia, Pa., for Curtis.

Joseph S. Ricchiuti, Philadelphia, Pa., for Multipane, Inc.

## OPINION

DITTER, District Judge.

The question in this case is whether an employer should be denied subrogation rights granted by the Workmen's Compensation laws of Pennsylvania. It arises after the settlement of a claim against third parties who allegedly were responsible for plaintiff's injuries.

Noah Curtis was driving a truck for Multipane, Inc., U.S.A., his employer. While descending a long and steep hill, the vehicle's brakes failed and it went out of control. Several people, including Curtis, were injured and one man was killed in the ensuing collisions. Three federal suits and one state action were filed to recover damages. All have been completely resolved except this one, brought by Curtis, alleging that Multipane's truck was negligently repaired and maintained by Simpson Chevrolet and Broad Motors.[1] After five days of trial on the issues of liability, the case was settled except as to the one matter now before the court.

During the pendency of the litigation, Curtis received Workmen's Compensation benefits from Bituminous Casualty Company, the insurance carrier for Multipane. Under Pennsylvania's Workmen's Compensation law,

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe . . . Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe . . . and shall be treated as an advance payment by the employer on account of any future instalments of compensation. . . . 77 P.S. § 671.

---

1. The Ford Motor Company was also named as a defendant, but the claim against it was withdrawn prior to trial for a lack of evidence.

On this basis, Bituminous, which has all the rights the statute gives to Multipane, asserts it is entitled to recover from the proceeds of Curtis' settlement the amounts it paid to him for Workmen's Compensation. However, Curtis has moved to strike the claim of Bituminous contending that subrogation is an equitable doctrine and that the conduct of Multipane and Bituminous was such that justice and fair play require a forfeiture of any rights Bituminous might otherwise have.

It is Curtis' theory that Multipane and Bituminous had an affirmative duty to assist him in his efforts to recover against the third parties. He maintains that Multipane and Bituminous did not take even rudimentary steps to help him, much less do their utmost.[2] Therefore, he asserts that on equitable principles Bituminous should not share in the recovery he obtained.

Against this argument must be weighed the plain wording of the statute. It does not give the employer a mere right to be subrogated but says that the employer "shall be subrogated." There are no exceptions. In addition, the other provisions of this section show Pennsylvania's legislature clearly intended an employer was to be repaid from a third-party recovery. First, the employer can obtain payment even though it shares responsibility with the third party for the injury. Second, the employer is entitled to the full amount of its compensation lien, even if asserting it completely exhausts the recovery against the third party. This follows from the provision that the employee is entitled to the *excess* of amounts previously paid by the employer. Finally, any balance of the award still remaining will be applied against future compensation benefits. The legislative mandate is clear—the employer is to have a right to full subrogation—and the courts have interpreted the statute accordingly. In Smith v. Yellow Cab Co., 288 Pa. 85, 89, 135 A.

858 (1927) it was held that subrogation was available against the proceeds of a settlement as well as against a jury verdict. An attempt to circumvent the act by allocating a portion of the settlement to pain and suffering was unsuccessfully attempted in Bumbarger v. Bumbarger, 190 Pa.Super. 571, 155 A.2d 216 (1959). For the purposes of an employer's subrogation claim, it makes no difference whether payment is made under the Survival Act to the employee's estate or to his next of kin under the Death Act. In either case, subrogation is allowed for the amount paid: Skoda v. National Mines Corporation, 213 Pa.Super. 489, 492, 249 A.2d 829 (1968).

The prevention of a double recovery by an employee is given as one reason for allowing an employer's subrogation rights: Skoda v. National Mines Corporation, supra. This is a matter of public policy. An even more important reason for affording protection to Pennsylvania employers who have paid Workmen's Compensation benefits is found in O'Neill v. United States, 450 F.2d 1012 (3rd Cir. 1971). There the question was whether a defendant could obtain indemnification from plaintiff's employer in an amount which exceeded Workmen's Compensation benefits. The Court observed that because of certain provisions in the Pennsylvania Constitution, a compulsory Workmen's Compensation Act is not permissible. Thus, the legislature enacted a voluntary system. If unlimited indemnification was required of employers, it would encourage them to reject the act because participation in and contribution to the program would not limit liability. The same reasoning would apply in the instant case. One of the inducements for taking part in the Pennsylvania Workmen's Compensation plan is provided by the grant of subrogation rights. If this right is eroded, employer participation may suffer.

---

2. Initially, Curtis alleged bad faith on the part of Multipane and Bituminous. At oral argument, this ground was abandoned in favor of the contention that there had been a violation of an affirmative duty to assist plaintiff.

As authority for his position, plaintiff cites Arendas v. Rich & Company, Inc., 220 F.Supp. 957 (W.D.Pa.1963). In the *Arendas* case, plaintiff's decedent was allegedly killed by reason of defendant's failure to provide a safety device. In the resulting suit, decedent's employer was joined as a third party defendant. The jury rendered a verdict for both defendants and the matter was settled between the plaintiff and the defendant while a motion for a new trial was being considered. The employer's lien on the settlement proceeds was stricken because during trial counsel for the employer had not cooperated with counsel for the plaintiff and had resisted making certain records available. Moreover, the employer was content with the verdict in favor of the defendant. Analyzing these factors, the Court concluded there should be no subrogation rights in the settlement proceeds.

█ *Arendas* is distinguishable, however, from the instant circumstances. Here there is no charge that Multipane's counsel failed to assist plaintiff's counsel during trial or deliberately withheld any information prior to trial. At most, plaintiff has listed a series of incidents which might have been managed in a way that would have made trial preparation easier. In view of the unequivocal statutory language, the interpretations of this section, and the public policy reasons enunciated, plaintiff's assertions are insufficient. There was no showing of bad faith, no dereliction of duty, and no deliberate failure to help. Equally important, there was no showing of any prejudice to plaintiff. I have reviewed the plaintiff's charges, discussed below in detail, and am convinced that neither individually nor collectively would they support the striking of Multipane's lien.

1. Sale of the truck.

A few weeks after the accident, the truck which Curtis had been driving was sold for salvage. Before its disposition, an automobile expert retained by Multipane, Walter Van Ness Pruyn, examined the vehicle and took from it those components which he deemed relevant to possible litigation. He did not remove the brakedrums because it was his theory that a loss of hydraulic fluid had caused the brakes to fail rather than any problem with the drums. However, the brakedrums were later recovered and made available to experts for both sides. The parts he did take and his report were furnished to plaintiff's counsel and Mr. Pruyn testified extensively on plaintiff's behalf at trial.

Plaintiff now contends that the sale of the truck was adverse to his interests: first, because a metallurgist retained by plaintiff could not examine the drums before they were tested on behalf of the defendants, and second, because allegations made by Ford Motor Company about design characteristics could not be disproved. However, plaintiff's metallurgist did see the brakedrums before trial, removed portions of them, and made all tests he felt were required. It is not argued that the condition of the brakedrums had changed after the accident and prior to his analysis. So far as Ford was concerned, it is not contended the braking system in this truck was different in any material way from the systems found in all other trucks of the same model. Any one of them could have been obtained for examination, experimentation, or whatever else might have been required to contest any assertions made by Ford. Moreover, it is not suggested that Multipane was requested to keep control over the vehicle, or how long Multipane should have done so without being asked in order to protect plaintiff's rights.

I conclude that Multipane's sale of the truck was at most a failure to anticipate that which might make the work of plaintiff's counsel and experts easier. Because of their skill and resourcefulness, however, there was no prejudice to plaintiff's case.

2. Undiscovered Maintenance.

Curtis contends that counsel for Multipane provided only partial information about the truck's repair and maintenance history. On the basis of invoices

furnished to him, it was the belief of plaintiff's counsel that the vehicle had been serviced only by Simpson Chevrolet and Broad Motors. After the statute of limitations had run, however, plaintiff's counsel learned that John B. White Company had repaired the brakes less than three months before the accident.

Plaintiff contends this could have been fatal to his chances at trial because the jury might have concluded that White was at fault and exculpated Simpson and Broad. However, there is no intimation that Multipane, Bituminous, or their counsel acted in bad faith—at most, records were subsequently made available that had not originally been found. More importantly, there was no prejudice to plaintiff since nothing pertaining to the White bill was included in the pre-trial order, and thus no evidence concerning it was permitted during the trial in accordance with Local Rule 7(b) and F.R.Civ.P. 16. While counsel argues that the court's ruling might have prompted a successful appeal, cases such as Ely v. Reading Company, 424 F.2d 758, 763–764 (3rd Cir. 1970), indicate to the contrary. With regard to the missing repair bill there may have been a lack of diligence, but no harm was done to plaintiff.

### 3. Colored photographs.

Multipane's automotive expert took *color* photographs of the truck during his inspection, but did not tell anyone that he had done so. According to plaintiff's counsel, this put him in a "difficult position" concerning pre-trial assertions made on behalf of the defendants. However, the existence of the photographs was discovered in time for trial and they were offered as evidence by the plaintiff. There is no contention that either Multipane or Bituminous knew of the pictures, that there was any inadvertence on their part or that of their counsel, or how plaintiff suffered any specific harm.

### 4. Wage Records.

Curtis complains that Multipane did not maintain adequate salary records and did not make information concerning his income for prior years available to him. Curtis contends that there were two potential, adverse effects. First, had he testified about his wages he would only have done so from recollection and he might have been impeached, and secondly, there would have been an insufficient basis for an actuary to give evidence about the loss of future income.

Sometime after the accident, Multipane ceased operation and was absorbed by another corporation. By the time they were requested, the wage records had been lost or destroyed. There was no deliberate withholding of information —at most, the new company failed to keep old wage records of its predecessor, Multipane. In addition, other documentation was available. If Curtis did not have copies of his own tax returns, he could have obtained them from the Internal Revenue Service. Similar records would have been available from the Workmen's Compensation Board and in all probability from Curtis' union.

Since the case was settled before plaintiff was called upon to testify as to his wages and in view of the availability of other corroborating data, I conclude plaintiff was not prejudiced.

### 5. The State Court Suit.

Edward and Geraldine Romonoski, injured when their car was struck by the truck Curtis was driving, brought suit against Curtis and Multipane in state court.[3] Multipane joined Simpson Chevrolet, Broad Motors, and the Ford Motor Company as third party defendants. Various continuances were granted, but a firm date for trial was finally fixed. At the last minute, the suit against the third party defendants was dismissed with prejudice. Multipane presented no

---

3. No. 248, July Term 1968, Court of Common Pleas, Luzerne County, Pennsylvania. I have used the spelling of the name "Romonoski" shown on the records of the Luzerne County Court rather than the spelling set forth on the various papers filed in this case.

defense, and the Romonoskis were awarded damages totalling $15,000.

Curtis now complains that Multipane's handling of the Romonoski matter unnecessarily exposed him to summary judgment in the instant case on the basis of res judicata or collateral estoppel. Curtis contends that to protect his interests—and thus its subrogation rights—Multipane should have withheld the joinder of Simpson, Broad, and Ford, or once having joined them, obtained a continuance until the disposition of his suit. If that could not be done, Curtis argues the Romonoski suit should have been settled.

The nub of Curtis' argument is that Multipane's duty to him transcended its privilege to defend the suit brought by the Romonoskis despite the fact that his theory and Multipane's theory on the cause of the accident were identical. In other words, this is not a case where two parties eventually interested in a common recovery were taking inconsistent positions or following different courses. Quite to the contrary: Curtis' complaint is that he might have been harmed because he and Multipane took the same view of the accident. From the dollar and cents standpoint, Curtis' claim for damages turned out to be larger than the Romonoskis'. Certainly Curtis' suit was more important to him than the Romonoski action was to Multipane. Nevertheless, it does not follow that Multipane had to surrender a bona fide defense to the claims made against it as the price of retaining the right of subrogation granted by the Workmen's Compensation statute.

Counsel for the parties and the State Trial Judge, the Honorable Bernard C. Brominski, were all aware of the existence of the instant case and the possibility of a res judicata—collateral estoppel defense to it. Curtis' own lawyer permitted him to attend the proceedings but would not allow him to testify. Without Curtis, Multipane had no case against

Ford, Simpson Chevrolet, and Broad Motors. The discontinuance of the third party action against them was specifically limited to the Romonoski suit and in granting the dismissal, Judge Brominski determined that Curtis' individual rights would not be affected. I agreed that Curtis had not had his day in court and therefore refused the motions for summary judgment filed by Ford, Simpson Chevrolet, and Broad Motors. Although this ruling could have been appealed, it goes without saying that I thought it was correct and that the Romonoski matter had been handled by counsel for Multipane with full appreciation of Curtis' rights and with every effort to protect them.

Curtis' contention that a continuance would have protected his interests by enabling the instant case to be tried first is valid—but the possibilities were explored and the state court refused the necessary request. The case was an old one and further delay did not seem warranted to Judge Brominski. Curtis' argument that the matter could have been settled at close to the verdict figure—and therefore should have been settled to protect his interests is without factual support. I can only speculate as to the nature of the Romonoskis' injuries, their expenses, the skill of their counsel, and the multitude of other facets which affect settlement. In no event is there a constant correlation between claim, settlement potential, and ultimate verdict—even to those blessed with hindsight.

I can find nothing in the handling of the Romonoski suit which would justify overruling the mandate of the Pennsylvania legislature by denying subrogation rights to Multipane.

6. Workmen's Compensation Benefits.

Before trial, Bituminous completed its obligation to compensate Curtis for his permanent injuries and its payments ceased. Plaintiff now complains that this action subjected him to financial

pressure to settle his case for an amount below its true value. His position is without merit. Although he contended that he was permanently disabled and unable to work, he had not filed the required petition with the Board to obtain a modification of its prior order. See 77 P.S. § 772. The failure of Bituminous to pay more than the compensation award against it does not amount to a failure to assist plaintiff in his efforts to recover damages and would not justify the striking of the subrogation lien.

### Multipane's New Matter

■ One further matter requires decision. In the ordinary case, an employer which asserts subrogation rights to a fund obtained from a third party must pay a proportionate part of the employee's attorney fees: Long v. Marino Masse, Inc., 205 Pa.Super. 344, 208 A.2d 920 (1965). Here, Multipane asks that plaintiff's counsel be denied his fee for obtaining the subrogated fund. Multipane argues that the filing of the petition to strike was an attempt by counsel for Curtis to circumvent the Workmen's Compensation laws and was not done in good faith. Multipane contends that it should thereby be relieved of any obligation to pay a fee on its share of the recovery. I do not agree. Although I have not found in plaintiff's favor, there is nothing to suggest that counsel for Curtis acted improperly. His primary obligation was to Curtis. He presented what he considered to be compelling reasons to set aside the subrogation lien. The fact that he did so should not exempt Multipane, or more accurately its insurance carrier, from sharing in the costs of the fund from which it will benefit. In circumstances such as this, a fee is not payable to counsel because he represents the employer with all the duties attendant in the attorney-client relationship, but because a fund has been created through his efforts from which the employer will benefit.