554 A.2d 485

**Ova WINFREE and Lana Winfree, his wife, Appellee,**

v.

**PHILADELPHIA ELECTRIC COMPANY and Allis–Chalmers Corporation.**

**Appeal of ALLIS–CHALMERS CORPORATION.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1988.

Decided Feb. 8, 1989.

William T. Wilson, Pittsburgh, for appellant.

John Brian Frock, for Winfree.

William J. Gallagher, Kennett Square, for P.E.C.O.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

We granted Appellant's petition for allowance of appeal to review the order of the Superior Court, 362 Pa.Super.

646, 520 A.2d 1222, affirming the order and judgment of the Court of Common Pleas of Chester County which had denied the Appellant's Petition To Set Aside or Strike Satisfaction of Judgment and to Mark Judgment to the Use of Allis–Chalmers (hereinafter Petition). The essence of the Appellant's petition attacking the judgment is that it has an absolute right to subrogation under § 319 of the Workmen's Compensation Act, 77 P.S. § 671. Although we do not agree with the procedure utilized by the Appellant to protect its right, we do agree that its subrogation rights under the Act are absolute.

Ova Winfree commenced litigation by the filing of a complaint alleging that the injuries he sustained were the result of the negligence of the Philadelphia Electric Company (PECO). PECO in turn joined the Appellant, Allis–Chalmers Corp., as an additional defendant seeking contribution for any damages that it may have to satisfy. At the time of the accident, Appellee, Ova Winfree, was the employee of the Appellant. Because of the injuries sustained the Appellee was unable to work, resulting in the payment of workmen's compensation benefits to him in accordance with the Act.

At the conclusion of the trial, the jury found PECO to be solely liable and awarded damages in the amount of $800,000 to the Appellee, Ova Winfree, $175,000 to his wife, and delay damages in the amount of $212,483.28. After the denial of post-trial motions, judgment was entered on the verdict and PECO filed an appeal to the Superior Court. In January, 1984, PECO and the Appellees agreed to settle the judgment for $800,000. The Appellees had the judgment marked satisfied and PECO withdrew its appeal.

Appellant alleged in its Petition, that it was never notified of the settlement, the satisfaction, or the withdrawal of the appeal until after the entire procedure was completed. In order to recover the workmen's compensation benefits paid, Appellant then filed its Petition with the trial court setting forth its requested relief.

We feel compelled to initially comment on the procedure utilized by the Appellant in this matter. In *Epstein v. Kramer*, 365 Pa. 589, 76 A.2d 212 (1950), we noted that a Petition For A Rule To Show Cause Why A Satisfaction Of Judgment Should Not Be Stricken From The Record is equitable in nature. To grant such relief, a plaintiff must demonstrate that he was induced to record the satisfaction of judgment by fraud or mistake. However, in *Epstein* we affirmed the denial of the petition concluding that the appropriate remedy was an assumpsit action for breach of contract. No evidence had been offered demonstrating that the plaintiff was fraudulently induced to satisfy the judgment of record. Rather, the defendant failed to honor the agreement to pay the judgment after the judgment was satisfied on the record.

Likewise, in *Neustein v. Insurance Placement Facility of Pa.*, 271 Pa.Super. 126, 412 A.2d 608 (1979), the Superior Court affirmed the lower court's refusal to strike a satisfaction of judgment when the plaintiff failed to demonstrate any facts establishing either fraud or inducement in the satisfaction of the judgment. So long as the plaintiff was not duped into actually satisfying the judgment, that judgment would not be stricken.

In the case sub judice, the Appellant does not claim that the Appellees were fraudulently induced into satisfying the judgment. Instead, the Appellant contends it was defrauded by the actions of the Appellees and PECO. Thus, on the face of its petition, the Appellant would not be entitled to the relief sought since the Appellees received a jury verdict and PECO agreed to pay a settlement which obviously the Appellees have agreed to accept. The Appellees are not now alleging that PECO committed any fraud. On the face of the judgment and record facts there is no reason to strike the satisfaction. No facts have been pled showing that PECO fraudulently induced the Appellees to satisfy the judgment. Thus, the procedure utilized by Appellant was inappropriate.

■ Our affirmance of the denial of Appellant's petition does not, however, deny the Appellant's subrogation rights as the same may still be pursued through a separate action against both the Appellees and PECO. In pertinent part, § 671 states as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, ... against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation. (footnote omitted)

77 P.S. § 671.

When a statute is unambiguous on its face, its clear meaning cannot be ignored to reach a desired result. 1 Pa.C.S. § 1921. In the cited section, the statute clearly and unambiguously states that, "... the employer shall be subrogated to the right of the employee ... against such third party to the extent of the compensation payable ..." The legislature could not have manifested more clearly its intent that the subrogation rights of the employer are absolute. We have consistently held in the past that the purpose of the Act was to provide the employee an exclusive right to benefits without the necessity of proving fault in exchange for the abrogation of the employee's common

law negligence remedies. *Leflar v. Gulf Creek Indus. Park No. 2*, 511 Pa. 574, 515 A.2d 875 (1986); *Socha v. Metz*, 385 Pa. 632, 123 A.2d 837 (1956). Following the statutory scheme, we recently held that the failure to raise the Act as an affirmative defense to a tort action did not result in a waiver. *Leflar, supra.* Therefore, as a general principle of law, the employer's subrogation rights are statutorily absolute and can be abrogated only by choice.

The Appellees and both lower courts rely upon *Olin Corporation v. Workmen's Compensation Appeal Board*, 14 Pa.Commw. 603, 324 A.2d 813 (1974) and *Travelers Insurance Co. v. Hartford Accident and Indemnity Co.*, 222 Pa.Super. 546, 294 A.2d 913 (1972), to support the conclusion that the Appellant is estopped from exercising its subrogation rights by equitable principles. In *Olin*, Commonwealth Court upheld the claimant's right to pursue workmen's compensation benefits even though he did not protect his employer's future subrogation claim. The court held that since no benefits had been paid prior to the dismissal of the third party complaint, the claimant had not affected the employer's subrogation rights. More importantly, the court held that statutory benefits arise without regard to the possible liability of third persons. Thus, workmen's compensation benefits are not contingent but absolute.

In *Travelers Insurance Co., supra*, the injured employee entered into a consent judgment against joint tortfeasors and satisfied the judgment upon payment. Prior to the settlement, the Appellant-plaintiff, the employee's workmen's compensation carrier, had advised the Appellee-defendant, the insurance carrier for one of the tortfeasors, of its subrogation claim. However, the plaintiff never advised the employee or his attorney of its claim, nor did it intervene in the personal injury action. While the court did recognize subrogation as an equitable remedy, it did so in the context of the application of the concept of promissory estoppel. Thus, if the workmen's compensation carrier had justifiably relied upon the liability carrier's protection of its

rights in the third party negligence action, then promissory estoppel would be applicable and the workmen's compensation carrier would be entitled to proceed to recoup the benefits it paid. However, since the workmen's compensation carrier did not prove any evidence of negligence as to the cause of the employee's injuries, it was foreclosed from being reimbursed as a subrogee under *Broderick v. Great Lakes Casualty Co.,* 152 Pa.Super. 449, 33 A.2d 653 (1943).

In addition, both lower courts relied upon *Meehan v. City of Philadelphia,* 184 Pa.Super. 659, 136 A.2d 178 (1957). In *Meehan,* the plaintiff and the City of Philadelphia filed a joint action against the third party tortfeasor for damages arising out of the injuries the plaintiff received as the result of a motor vehicle accident. Both then settled the cause of action against the tortfeasor. Prior to the settlement, the City had paid the plaintiff benefits under the Act of June 28, 1935, P.L. 477, 53 P.S. § 637 and the Workmen's Compensation Act. The City then tried to recover a credit for any workmen's compensation benefits paid or to be paid. In rejecting the City's claim, the court relied upon equitable principles and held that the plaintiff had been led to believe that his settlement with the City resolved all subrogation claims by the City. Therefore, the City was precluded from pursuing any further claims against Meehan.

Notwithstanding the Appellees' contentions, the cited cases are just as supportive of the Appellant's position as of the Appellees'. In both *Traveler's Insurance Company* and *Meehan,* the court looked to the interplay between the claimant and his employer to determine whether estoppel was appropriate in supporting a denial of subrogation rights. In each case, estoppel did not apply to the obtaining of benefits, only to the enforcing of the subrogation rights. In the case, sub judice, the lower courts agreed with the Appellees' argument that the Appellant should be denied its subrogation rights because it did not fully cooperate in obtaining a negligence judgment. In fact, the Appellees argue that Appellant acted in direct controvention of their interests. There appears to be some support for Appellees'

argument in the record. However, Appellant's actions must be viewed in the context in which they arose. Appellees seem to lose track of the fact that Appellant was joined by the original defendant in a cause of action in negligence based upon contribution or indemnification. Thus, the Appellant did in fact become an adversary. It therefore was not unreasonable for the Appellant to pursue the actions it did.

Reliance upon the equitable principles espoused in *Traveler's Insurance Company* and *Meehan* is misplaced in that this Appellant's actions were in furtherance of its pursuit to exonerate itself from liability. Adopting Appellees' argument would be placing the employer in the dubious position of cooperating with its employee and running the risk of being found solely liable or vigorously pursuing its own exoneration and losing its subrogation rights. We will not subject employers to this choice. We therefore hold that under these circumstances the right of subrogation is absolute.

The Order of the Superior Court is affirmed without prejudice to the Appellant to pursue its subrogation claim against the Appellees and/or PECO.[1]

LARSEN and PAPADAKOS, JJ., filed concurring and dissenting opinions.

LARSEN, Justice, concurring and dissenting.

I concur with the majority in affirming the order of the Superior Court, and I also adopt the memorandum opinion of the Superior Court which opinion I have attached hereto. I dissent to that portion of the majority's disposition of this case where the majority states that the order of Superior Court is affirmed "without prejudice to the Appellant to

1. It seems to be in dispute as to how much was paid by the Appellant to the Appellee, Ova Winfree, in workmen's compensation benefits. Because of our disposition it is unnecessary for us to calculate in the first instance what benefits were paid or what credit should be given for attorney's fees. Such determination can be made at the time the Appellant proceeds to enforce its subrogation rights against Appellees, PECO or both.

pursue its subrogation claim against the Appellees and/or PECO." Maj. op. at 399. See my concurring opinion in *Heckendorn v. Consolidated Rail Corp.*, 502 Pa. 101, 465 A.2d 609 (1983), where I stated that "subrogation rights are always subject to equitable principles." *Id.*, 502 Pa. at 109, 465 A.2d at 613.

## APPENDIX

In the Superior Court of Pennsylvania

No. 02847 Philadelphia 1985

Appeal from the Order entered October 23, 1985 in the Court of Common Pleas of Chester County, Civil Division No. 144 October Term, 1974.

Before: CIRILLO, President Judge, WICKERSHAM and KELLY, JJ.

MEMORANDUM:

This appeal arises from an Order entered October 23, 1985 by the Honorable John E. Stively, denying appellant's petition to set aside or strike the satisfaction of judgment entered by court order on January 25, 1984. We reiterate the history of this action as summarized by the court below:

The captioned litigation was initiated on December 27, 1974 and arose out of a 1973 accident that occurred on the premises of defendant Philadelphia Electric Company during an overhaul of that Company's equipment performed by additional defendant [appellant herein] Allis–Chalmers Corp. (hereinafter referred to as PECO and Allis–Chalmers, respectively). As a result of the accident, an employee of Allis–Chalmers, plaintiff Ova Winfree [appellee herein], sustained severe damage to his left hip. The subsequent proceedings may be summarized as follows:

Winfree filed suit with his wife, Lana Winfree, against PECO and PECO then joined Allis–Chalmers as an addi-

tional defendant.[1] At the conclusion of the 1982 trial, the jury found defendant PECO solely liable and determined damages in the amounts of $800,000.00 for plaintiff, Mr. Winfree, and $175,000.00 for Mrs. Winfree. The addition of delay damages brought the total to $1,187,483.28. Upon resolution of post trial motions, the plaintiffs entered judgment on the verdict and PECO filed Notice of Appeal to Pennsylvania Superior Court. In January of 1984, PECO and the plaintiffs agreed to a settlement in the form of one $800,000.00 payment by defendant PECO to the Winfrees. Upon the filing of an Order by plaintiffs that the judgment be marked satisfied, PECO withdrew its appeal from the Superior Court.

Allis–Chalmers, through its workmen's compensation insurance carrier made certain payments to Mr. Winfree representing workmen's compensation benefits under the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq. Through its petition to set aside or strike satisfaction of judgment and to mark judgment to the use of petitioner, Allis–Chalmers now contends that it should be subrogated out of the judgment representing the settlement between the plaintiffs and PECO.

(Trial Ct.Op. at 1–2).

The lower court declined to grant petitioner Allis–Chalmers the requested relief because: "The relief sought by petitioner is not within the power of this court to grant." Petitioner filed timely appeal to this Court. For the reasons enunciated herein, we affirm the decision of the lower court.

Although codified by the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq., the right of an employer to subrogation to the extent of the compensation payable to an employee whose injuries were caused by the fault of a third party, is equitable in origin. Section 319 of the Act delineates an employer's rights:

1. Several other defendants were originally named but were later dropped from the action.

## SUBROGATION OF EMPLOYER

§ 671. Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer *shall be subrogated* to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

(Emphasis added). (Sections omitted).

Despite the emphatic mandatory language of the statute, that "the employer shall be subrogated to the right of the employee," equitable principles continue to govern Pennsylvania courts' application of this law, and, therefore, exceptions to the mandatory nature of the statute have been recognized. *See Olin Corporation v. Workmen's Compensation Appeal Board,* 14 Pa.Cmwlth. 603, 324 A.2d 813 (1974); *Travelers Insurance Co. v. Hartford Accident and Indemnity Co.,* 222 Pa.Super. 546, 294 A.2d 913 (1972); *Meehan v. City of Philadelphia,* 184 Pa.Super. 659, 136 A.2d 178 (1957). *Accord Curtis v. Simpson Chevrolet,* 348 F.Supp. 1062 (E.D.Pa.1972).

Ordinarily, an employer's right to be subrogated to an employee's recovery from a third party would exist regardless of the fact that the employee recovered by way of settlement rather than verdict. *Meehan,* 136 A.2d at 180; *Smith v. Yellow Cab Co.,* 288 Pa. 85, 135 A. 858 (1927). This right of subrogation is further strengthened when the subrogor has no notice of the settlement; however if the subrogor knows of the settlement, the subrogor is under a duty to exercise "reasonable diligence" in collecting its

payment. *Meehan, supra,* 136 A.2d at 181. *Travelers, supra,* 294 A.2d at 915.

In the instant case, appellees did not inform appellant of the settlement agreement reached with PECO. Nonetheless that fact alone is not dispositive.

> [O]ur Supreme Court said: 'We have many times said that subrogation is a matter of pure equity, and is never allowed where it would be inequitable to do so. Consequently, as 'he who would have equity must do equity,' he must neither do nor leave undone anything which results in harm to those who are or may be affected by the subrogation which he claims.'

*Smith v. Yellow Cab Co.,* 288 Pa. at 89, 135 A. at 860 (1927). In determining whether the subrogor "did equity," the trial court noted, and our review of the record confirms the following facts:

> Allis–Chalmers engaged in a litigation strategy designed to prevent the plaintiffs from successfully resolving their claim. Prior to trial, petitioner undertook discovery where none had been commenced by the plaintiff or defendant PECO; petitioners filed motions for sanctions against plaintiffs for delay in filing answers to petitioners' interrogatories; petitioner arranged for the taking of a deposition of an orthopedist in Tennessee and refused to pay the cost of attendance of plaintiffs' counsel; petitioner arranged for the travel and deposition of another Allis–Chalmers employee, Mr. Winfree's supervisor, who testified to the contributory negligence of Mr. Winfree. At trial petitioner stated that it intended to demonstrate that 'the accident occurred because of plaintiff's own misconduct.' (trial transcript, trial: June 1—June 9, 1982, hereinafter transcript, p. 23); petitioner cross-examined Mr. Winfree about the instant of the accident, returning consistently to questions involving mis-step, slipping and falling on a surface purportedly known to the plaintiff to be grease covered. (Transcript p. 150–182); petitioner cross-examined several witnesses of whom defendant PECO intended to ask no questions. (transcript,

p. 444–447; 501–509; 630–641). With respect to proceedings on points for charge sought by plaintiffs, petitioner frequently objected, either in conjunction with defendant PECO's objections or through independently voiced objections. (Transcript p. 936–954). Furthermore, petitioner requested points for charge on plaintiff's contributory negligence and their effort to recover damages representing impairment of Mr. Winfree's earning power.

Allis–Chalmers' position relative to the plaintiffs was clearly stated in its summation to the jury. Petitioner raised the following points for final consideration: In the moments proceeding the accident, Mr. Winfree "took a chance" and, in so doing, he simply "slipped" and fell, causing his arm injuries. (Transcript p. 990–991). The testimony of the only eyewitness was a fellow employee and fellow union member of Mr. Winfree. (Transcript p. 992–993). Finally, petitioner characterized plaintiff's theory of liability against defendant PECO as "absurd", "ridiculous" and unreasonable. (transcript p. 1002).

(Trial Ct.Op. at 7–9).

Weighing against all of these actions are Allis–Chalmers' arguments that: 1) it did attempt to assist Winfree in developing his case; and 2) Allis–Chalmers was obligated to present a vigorous defense due to an indemnity contract they had with PECO. As to the first contention, the company developed separate files for handling Winfree's case and its own defense. (R.R. 192a, 241a). However, the record clearly reveals that while Allis–Chalmers requested and Winfree's counsel agreed that Allis–Chalmers would be subrogated to any recovery by Winfree against PECO, it later forbade Winfree's counsel from having contact with Allis–Chalmers' insurance carrier. (R.R. 253a–254a, 244a). Winfree then informed Allis–Chalmers that he could no longer maintain any subrogation interest on Allis–Chalmer's behalf. Allis–Chalmers blames lack of communications between its own departments for the difficulties appellee faced. (Appellant's brief at 6, 7).

Allis–Chalmers also argues that it was compelled to present an affirmative defense once joined as a defendant due to the existence of an indemnity clause in the construction contract with PECO. Thus, Allis–Chalmers' defense in Winfree's action against PECO was two-fold: "(t)hat Winfree's injuries were not due to the negligence of either PECO or itself, and that in any event it had no duty to indemnity." (Appellant's brief at 23). Appellant contends that defending on the indemnity grounds alone would have been an inadequate defense.[2]

> Indeed, the record fully justifies Allis–Chalmers' judgment that it could not depend upon PECO's presentation of its defense and its decision to aggressively present its own. Otherwise, what would preclude the original defendant from capitulating to the plaintiff to the ultimate prejudice of the employer, if the employer is precluded from offering evidence as to anything but indemnity.

(Appellant's brief at 23). However, the trial court's ruling does not limit an employer's defenses to indemnity issues alone; it merely points out that the consequences of presenting an affirmative defense of contributory negligence may include loss of subrogation when an employer concurrently fails to cooperate fully with its employee's case. We do not preclude employers from presenting any viable defense as long as there remains a clear, unambiguous commitment to cooperate with an employee's legitimate requests for assistance in developing the employee's case. If that commitment wavers or fails, as it has in this case, then the equitable remedy of subrogation may be denied. Consequently, we affirm the trial court and find no merit to appellant's arguments.

Appellant directs our attention to *Curtis v. Simpson Chevrolet, supra,* wherein that court held that an employer was entitled to subrogation despite certain acts by the employer that arguably made the employee's case more difficult.

**2.** We note the jury ultimately found that Allis–Chalmers was not liable on their indemnity contract with PECO.

*Here there is no charge that [employer's] counsel failed to assist plaintiff's counsel during trial or deliberately withheld any information prior to trial. At most plaintiff has listed a series of incidents which might have been managed in a way that would have made trial preparation easier.* In view of the unequivocal statutory language, the interpretations of this section, and the public policy reasons enunciated, plaintiff's assertions are insufficient. *There was no showing of bad faith, no dereliction of duty, and no deliberate failure to help. Equally important, there was no showing of any prejudice to plaintiff.*

*Curtis,* at 1065. (Emphasis added). The facts of *Curtis* are inapposite to our case in that the record herein reflects that there was not a clear, unambiguous commitment to fully cooperate with the employee's legitimate request; this can only be considered as a "deliberate failure to help." Allis–Chalmers' half-hearted effort to aid appellee's personal injury claim against PECO was submerged under the aggressive, affirmative defense of contributory negligence which Allis–Chalmers prepared, and eventually presented at trial. Therefore, we agree with the trial court that the facts of *Arendas v. Rich & Company Inc.,* 220 F.Supp. 957 (W.D.Pa.1963), are more to the point.

In the *Arendas* case, plaintiff's decedent was allegedly killed by reason of defendant's failure to provide a safety device. In the resulting suit, decedent's employer was joined as a third party defendant. The jury rendered a verdict for both defendants and the matter was settled between the plaintiff and the defendant while a motion for a new trial was being considered. The employer's lien on the settlement proceeds was stricken because during trial *counsel for the employer had not cooperated with counsel for the plaintiff and had resisted making certain records available.* Moreover, the employer was content with the verdict in favor of the defendant. Analyzing these factors, the Court concluded there should be no subrogation rights in the settlement proceeds.

*Curtis* at 1065. (Emphasis added). Allis–Chalmers' counsel did not cooperate with Winfree's counsel, and rebuffed requests for assistance. (R.R. at 262a).

The lower court, in the case before us, correctly declined to distinguish *Arendas* from *Curtis*, and perceived that the cases, read in conjunction, suggest a test which we adopt and enunciate as: where an employer/carrier deliberately fails to aid, or obstructs, or prejudices the employee/plaintiff, that employer has waived its right to subrogation. Although we face an issue of first impression herein, we rely upon both federal cases which have held similarly, see *Curtis, Arendas, supra,* and on the wisdom espoused by our sister state, Delaware.

In *Baio v. Commercial Union Insurance Co.,* 410 A.2d 502 (1979), the Delaware Supreme Court held that, if a conflict of interest exists for an employer/carrier in seeking to protect its rights, its conduct is governed by equitable principles; where the employer/carrier fails to "do equity" in regard to its employee, the employer/carrier waives its right to subrogation relief. In *Baio,* as in the instant case, the employer/carrier not only failed to assist the employee, but sought to deny the employee *any* recovery. *Baio,* at 507.

Thus we do not hesitate to affirm the trial court's decision that Allis–Chalmers has waived its right to subrogation in this case.

As a final procedural point, we note that the trial court ruled that Allis–Chalmers' petition to strike or set aside the satisfaction of judgment and to mark judgment to the use of petitioner was "not within the power of this Court to grant." (Trial Ct.Op. at 2). The Court based its reasoning on the premise that "the components of a judgment, once stricken or set aside, do not remain available for reapportionment at the request of a petitioning party." (Trial Ct.Op. at 3). It is true that when a judgment is stricken, the original judgment is destroyed; it is as though no judgment had ever been entered. *Malicia v. Proietta Catering & Cocktail Lounge, Inc.,* 270 Pa.Super. 342, 411

A.2d 751 (1979). However, a satisfaction of judgment is different; the motion to strike a satisfaction of judgment is addressed to the Court's equitable discretion. *Epstein v. Kramer,* 365 Pa. 589, 76 A.2d 212 (1950); *Neustein v. Insurance Placement Facility,* 271 Pa.Super. 126, 412 A.2d 608 (1979). The motion to strike may be granted if satisfaction was improperly entered. Finally, the right to have an entry of satisfaction struck is subject to the intervening rights of innocent third persons, whose interests may be protected in the strike-off order. *See Ackerman v. Josephs,* 31 Co.Ct. 5, 6 Lack.Jur. 190; *Standard PA Practice 2d* § 78–45 (1983). Therefore, had Allis–Chalmers properly demonstrated that either the satisfaction was improperly entered, or that Allis–Chalmers was an *innocent* third party, it would have been entitled to the relief requested. We find Allis–Chalmers failed to demonstrate any appropriate ground for relief. Accordingly, we affirm the order of the lower court.

PAPADAKOS, Justice, concurring and dissenting.

I concur with the majority in affirming the order of the Superior Court but I dissent from the balance of the opinion commencing with the first full paragraph on page 394 (opinion) and continuing to the end. The discussion of whether Appellant has an absolute right to subrogation is, in my view, irrelevant to the issue before us.

As the majority states:

We granted Appellant's petition for allowance of appeal to review the order of the Superior Court affirming the order and judgment of the Court of Common Pleas of Chester County which had denied the Appellant's Petition to Set Aside or Strike Satisfaction of Judgment and to Mark Judgment to the Use of Allis–Chalmers (hereinafter Petitioner). (op. 394)

The only issue before us is whether Common Pleas properly denied Appellant's Petition. The majority has quickly resolved this issue by correctly pointing out that the "procedure utilized by the Appellant to protect its right" (op. 394)

was incorrect. "On the face of the judgment and record facts there is no reason to strike the satisfaction.... Thus, the procedure utilized by Appellant was inappropriate." (op. 395).

Having properly disposed of the sole issue before us, I believe it is inappropriate for the majority to discuss subrogation rights and methods of enforcing same. Accordingly, I dissent from the inclusion of this material as being pure dicta.