**Jason P. GLASS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (The City of Philadelphia), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 30, 2012.

Decided Jan. 10, 2013.

John J. Del Casale, Media, for petitioner.

Martin G. Malloy, Philadelphia, for respondent City of Philadelphia.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Jason P. Glass (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting the Petition to Review Compensation Benefits Offset (Review Petition) filed by The City of Philadelphia (Employer), which asserted its entitlement to subrogation against Claimant's third-party recovery. On appeal, Claimant argues that Employer's subrogation right should have been extinguished pursuant to *Thompson v. Workers' Compensation Appeal Board (USF & G)*, 566 Pa. 420, 781 A.2d 1146 (2001), because Employer acted in deliberate bad faith when it did not ensure that evidence critical to Claimant's third-party action was preserved or because one of Employer's employees was derelict in her duty to assist Claimant in his third party action. Because we discern no error in granting the Review Petition, we must affirm.

On April 12, 2006, Claimant, a police officer, sustained injuries when he lost control of the motorcycle on which he was training and it fell on top of him. Employer accepted Claimant's injuries as being work related and paid Claimant Injured–On–Duty (IOD) benefits, as well as for his

medical treatment. Shortly thereafter, Claimant filed a third-party tort action against Philadelphia Cycle Center (PCC), alleging that improper maintenance caused him to lose control of the motorcycle resulting in the crash and his injuries. Claimant ultimately obtained an arbitration award in the amount of $490,000 in his lawsuit against PCC on February 11, 2009. Employer filed the Review Petition on March 25, 2009, asserting that it was entitled to subrogation and its lien was $219,755.63 based on its payment of medical expenses and IOD benefits. Claimant objected to the Review Petition, claiming that Employer had acted in bad faith by allowing for the spoliation of evidence, which affected his third-party recovery and, therefore, Employer's subrogation right should be extinguished pursuant to *Thompson*. The matter was assigned to a WCJ, who accepted deposition and documentary evidence from both Claimant and Employer. (WCJ Decision, Findings of Fact (FOF) ¶¶ 1–5.)

Employer submitted a Report and Award from Claimant's arbitration, indicating that Claimant obtained an award in the third-party litigation in the amount of $490,000. Employer also presented a packet of information in support of its subrogation lien. The packet contained documentation of Employer's payment of medical expenses and IOD benefits in the amount of $219,755.63. (FOF ¶¶ 3, 5.)

In addition, Employer offered Claimant's engineer's (Engineer) report from the third-party action, which indicated that Claimant informed Engineer that, while he was operating the motorcycle on April 12, 2006, the motorcycle's clutch was "grabby," difficult to modulate, and the engine was cutting out while Claimant accelerated. (FOF ¶ 4b.) Engineer inspected the motorcycle on January 31, 2007 and found that its clutch lever had been replaced with a non-brand clutch lever, which, because it was not the correct lever for the motorcycle, was filed to fit into the clutch lever holder assembly, but still did not fit properly into the holder assembly. Engineer also noted that the clutch lever lacked lubrication. Additionally, Engineer noted that the motorcycle's drive chain and sprockets were worn and due for repair. Noting that the training "was made unnecessarily difficult due to excessive driveline lash, increased pull force on the clutch lever and poor engine operation," Engineer opined that the motorcycle had been improperly maintained and that this improper maintenance caused Claimant to lose control of the motorcycle and crash. (FOF ¶ 4d-e.)

Claimant offered the deposition testimony of a senior legal assistant (Legal Assistant) in the Claims Unit of Employer's Law Department (Law Department), who testified as follows. By letter dated May 3, 2006 (May 2006 Letter), Claimant's counsel (Counsel) informed Employer of the April 12, 2006 incident and Claimant's injuries, and requested that Employer direct its Police Department to refrain from altering the motorcycle, particularly the clutch mechanism, until Claimant could have the motorcycle inspected by an engineer. The May 2006 Letter also advised Employer that allowing the motorcycle to be altered prior to any inspection "would be tantamount to spoiling evidence." (May 2006 Letter at 1, R.R. at 124a.) Legal Assistant, whose duties included reading complaints and determining which of Employer's departments could have documents related to a particular complaint, received the May 2006 Letter on May 4, 2006. Legal Assistant's superior directed her to contact the Police Department to assure that the motorcycle would not be altered or modified before an inspection could be performed. Legal Assistant contacted the Police Academy, where

the accident occurred, and was directed to contact the 8th police district, where the motorcycles were located. She emailed Counsel on May 5, 2006 to inform him that no inspection had been permitted because Claimant had not complied with a particular police directive requiring him to notify the Police Department of his lawsuit and indicated that, once Claimant complied with that directive, Engineer would be given access to the motorcycle. Legal Assistant indicated that she spoke with a Lieutenant in the 8th police district on May 5, 2006, who informed Legal Assistant that Engineer could not inspect the motorcycle until Claimant complied with the police directive; Legal Assistant stated that she advised Lieutenant of the request not to have the motorcycle altered until Engineer could inspect it. (FOF ¶ 6a-d.)

On May 25, 2006, Legal Assistant received a letter from Counsel, dated May 16, 2006, that satisfied the notice requirements of the police directive. Legal Assistant again contacted the Lieutenant, notified her of the May 2006 Letter, and informed her to make the motorcycle available for inspection and to make sure it had not been or would not be altered. Legal Assistant did not have any documentation to support this request or that Lieutenant complied with the request. Legal Assistant stated that, in a letter dated July 13, 2006, she informed Counsel that he had to contact a Lieutenant G., the officer who conducted the training exercise. However, in e-mails related to setting up the inspection, Legal Assistant did not advise Counsel that he had to contact Lieutenant G. to arrange for the inspection. Legal Assistant denied that, on December 21, 2006, Counsel informed Legal Assistant that the Police Department would not allow Engineer to inspect the motorcycle until Employer's Solicitor's office gave written permission. As of December 2006, Legal Assistant was un-

aware of any alterations made to the motorcycle, but did not make any follow up inquiries to determine whether the motorcycle had been altered. Legal Assistant also noted that she verbally communicated with a Sergeant several times regarding the motorcycle, but agreed that she did not send e-mails to any member of the Police Department regarding the request to not alter the motorcycle. Legal Assistant sent Sergeant a memorandum, dated January 18, 2007, informing him that the Law Department had agreed to allow Engineer to inspect the motorcycle. On May 17, 2007, Legal Assistant drafted another memorandum indicating that the motorcycle should not be destroyed or altered. (FOF ¶ 6d-g.)

On September 20, 2006, a repair order for the motorcycle was issued, indicating that the motorcycle's clutch lever had been replaced. Legal Assistant asserted that she was unaware of this repair, acknowledged that the motorcycle's clutch had been referenced in letters and emails regarding this matter, and that the clutch had been replaced four months prior to Engineer's inspection. Legal Assistant also acknowledged that, in a letter dated September 16, 2009, the Police Department's Special Advisor to the Commissioner informed Counsel that "no e-mails, letters, notes, telephone messages or other written communications regarding the matter exist to be provided by," among others, the Lieutenant and Sergeant. (FOF ¶ 6(h)-(i).)

Claimant also presented the depositions of the Sergeant, who is assigned to the 8th police district and controls the motorcycles in that district, and the Lieutenant, an administrative lieutenant in the 8th police district. Sergeant indicated that he was aware of Claimant's motorcycle accident on April 12, 2006, the motorcycle was returned to the 8th district, and the motorcy-

cle was assigned to another officer between April 2006 and May 2007. Sergeant testified that any motorcycle repairs would be performed by PCC and denied seeing the May 2006 Letter from Counsel or the May 17, 2007 memorandum from Legal Assistant requesting that the motorcycle not be altered or discarded. He recalled receiving telephone calls from Legal Assistant in January 2007 regarding the inspection of the motorcycle, but did not recall any prior discussion with either Legal Assistant or the Lieutenant. Sergeant indicated that, had he been told or received something in writing about not altering the motorcycle, he would not have allowed the motorcycle's clutch lever to be replaced. (FOF ¶ 7.)

Lieutenant testified that she was aware of Claimant's April 12, 2006 injury, but that she was not directly aware of the May 2006 Letter. She stated that she recalled having one telephone conversation with a woman from Employer's Law Department, whose name she could not recall and on a date she could not recall, regarding the Law Department's decision to allow Claimant's Engineer to inspect the motorcycle. Lieutenant indicated that she told the woman that she could not authorize any outside inspection of Police property without a written subpoena or other documentation. She also testified that she probably indicated to the woman that the motorcycle had been in use since April 12, 2006. Lieutenant explained that she received nothing in writing regarding the motorcycle and denied having a discussion with anyone associated with Employer about not altering the motorcycle until after an inspection could occur. Lieutenant testified that, having not received such in-

structions, she did not advise Sergeant not to have the motorcycle altered before the inspection could occur. She denied that she would have indicated that an inspection was not permitted because Claimant had not complied with the police directive.[1] (FOF ¶ 8.)

The WCJ found Sergeant and Lieutenant more credible than Legal Assistant with regard to the communication that the motorcycle involved in the April 12, 2006 incident was not to be altered before it could be inspected. In doing so, the WCJ cited Legal Assistant's admissions that she did not make any written record of her communications with Sergeant or Lieutenant. Therefore, the WCJ found that Sergeant and Lieutenant "did not receive or issue orders that the motorcycle should not be modified." (FOF ¶ 11.) However, the WCJ found that Claimant did not establish, as required by *Thompson*, that Employer "undertook in deliberate bad faith to subvert a third party suit brought by" Claimant so as to extinguish Employer's subrogation lien. (FOF ¶ 12.) The WCJ determined that the testimony did not demonstrate deliberation; rather, it showed that "a series of apparent miscommunications within Employer resulted in the alteration of the motorcycle prior to its inspection." (FOF ¶ 12.) Because the WCJ found that there was no deliberate bad faith on Employer's part, he concluded that Employer was entitled to subrogation under Section 319 of the Workers' Compensation Act (Act).[2] (WCJ Decision, Conclusions of Law ¶ 1.)

■ Claimant appealed to the Board. The Board noted that there was no direct

---

1. Claimant also submitted the depositions of the PCC's General Manager and a PCC mechanic for the limited purpose of showing that PCC replaced the clutch lever after Counsel

contacted Employer about not altering the motorcycle. (FOF ¶¶ 9–10.)

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

evidence of Employer's alleged deliberate bad faith and that, when relying on "circumstantial evidence and the inferences to be deduced there[ ]from, such evidence must establish the conclusion sought and must preponderate in favor of that conclusion so as to outweigh any other evidence and any inconsistent inferences." (Board Op. at 4 (citing *Mathies Coal Co. v. Workmen's Compensation Appeal Board (Tau)*, 140 Pa.Cmwlth. 24, 591 A.2d 351 (1991).)) The Board concluded that it could "imagine any number of personal, emotional, or character flaws or weaknesses that could lead to one individual's failure to provide a needed notification to another, without requiring an 'undertak[ing] in deliberate bad faith to subvert a third party suit.'" (Board Op. at 10 (quoting *Thompson*, 566 Pa. at 432, 781 A.2d at 1154).) Accordingly, the Board held that Claimant did not establish that Employer acted with deliberate bad faith and, therefore, Employer retained its subrogation rights under Section 319 of the Act. Claimant now petitions this Court for review of the Board's Order.[3]

█ On appeal, Claimant argues that Legal Assistant's actions in failing to ensure that the motorcycle was not altered, despite her reports to Claimant's Counsel otherwise, demonstrate the deliberation to subvert Claimant's third party action necessary to extinguish Employer's subrogation lien under *Thompson*. Moreover, Claimant maintains that the WCJ's finding that there was a miscommunication between Legal Assistant, Sergeant, and Lieutenant is not supported by substantial evidence. Rather, according to Claimant, there is no credible evidence in the record to show that Legal Assistant communicat-

ed the directive that the motorcycle was not to be altered to Sergeant and Lieutenant.

Section 319 of the Act governs subrogation and provides, in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instal[l]ments of compensation.

77 P.S. § 671. Pursuant to the plain language of Section 319, subrogation is "automatic" and, "by its terms, admits no express exceptions, equitable or otherwise." *Thompson*, 566 Pa. at 428, 781 A.2d at 1151. Thus, our Supreme Court has held that, generally, the right to subrogation is "'statutorily absolute and can be abrogated only by choice.'" *Id.* at 429, 781 A.2d at 1152 (quoting *Winfree v. Philadelphia Electric Company*, 520 Pa. 392, 397, 554 A.2d 485, 487 (1989)).

In *Thompson*, the claimant was injured at work and, in addition to claiming workers' compensation benefits, filed a product liability action against the entities that had manufactured, distributed, and/or owned the machine on which he was injured. Af-

---

**3.** "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether

constitutional rights were violated." *Peters Township School District v. Workers' Compensation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008).

ter inspecting the machine, it was discovered that the claimant's injury was the result of certain bolts working loose on the machine and another bolt's failure due to being overloaded. The employer took possession of the bolts; however, by the time the trial took place, the employer had inadvertently misplaced the bolts without any of the parties inspecting them. The claimant argued that the employer's subrogation right should be extinguished because it had misplaced evidence necessary for his third party lawsuit. Based on the statutory language of Section 319, the Supreme Court, in *Thompson*, held that *ad hoc* equitable exceptions to subrogation were inappropriate in light of the plain language of the statute. *Id.* at 432, 781 A.2d at 1153–54. Although the Supreme Court held that the right of subrogation is absolute, it also recognized that "there may be circumstances where an employer undertakes in deliberate bad faith to subvert a third party suit brought by its employee, circumstances which might require a different calculus." *Id.* at 432–33, 781 A.2d at 1154. However, the Supreme Court concluded that the claimant did not demonstrate that the employer in *Thompson* acted in bad faith and, therefore, "the employer's right to subrogation remain[ed] absolute." *Id.* at 433, 781 A.2d at 1154.

■ There is no question that Claimant did not present any direct evidence that Employer, through Legal Assistant, acted with deliberate bad faith in an effort to subvert Claimant's action against PCC. Thus, as the Board noted in its opinion, Claimant had to meet his burden of proof through circumstantial evidence.

[W]hen a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the factfinder any other evidence and reasonable inferences therefrom which are inconsistent therewith.

*Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 139, 153 A.2d 477, 480 (1959). Thus, Claimant's circumstantial evidence, and the inferences reasonably deducible therefrom, must be adequate to support the conclusion that Legal Assistant acted in deliberate bad faith in an attempt to subvert Claimant's third party lawsuit and must preponderate in favor of that conclusion so as to outweigh, in the WCJ's mind, any other evidence and reasonable inferences therefrom that are inconsistent with the conclusion of deliberate bad faith.

Here, the circumstantial evidence presented to establish that Employer acted with deliberate bad faith to subvert Claimant's third party action was the testimony of Legal Assistant, Sergeant, Lieutenant, and the lack of written records regarding Legal Assistant's communications with Sergeant and Lieutenant. Legal Assistant testified that she contacted Lieutenant and Sergeant on multiple occasions regarding the motorcycle, informed them of Claimant's desire to have Engineer inspect the motorcycle, and advised them not to alter the motorcycle. Sergeant did recall speaking with Legal Assistant in January 2007 about arranging an inspection of the motorcycle, but did not recall receiving a directive not to alter the motorcycle. Lieutenant recalled receiving a phone call from a female in Employer's Law Department, with whom she discussed having the motorcycle inspected and that Lieutenant would need a subpoena or something in writing before she would allow the inspection. Lieutenant did not recall being advised not to allow the motorcycle to be altered. Based on this evidence, the WCJ

inferred that there must have been a miscommunication between Legal Assistant, Sergeant, and Lieutenant and that this miscommunication was not based on a deliberate bad faith desire to subvert Claimant's third party action against PCC. Thus, the WCJ, as fact finder, determined that Claimant's assertions that this evidence supported the conclusion that Legal Assistant acted with deliberate bad faith to subvert Claimant's third party lawsuit did not so preponderate and outweigh, in the WCJ's mind, the inconsistent inference from that evidence that the alteration was the product of miscommunication.

■ We conclude that the inferences the WCJ drew from the circumstantial evidence were reasonable and that a reasonable mind would accept such evidence as substantial evidence[4] to support the WCJ's finding that there was a miscommunication between Employer's employees. Therefore, Claimant did not establish that Legal Assistant acted in deliberate bad faith to hinder Claimant's third party action. Legal Assistant, Sergeant, and Lieutenant all testified that they had at least one discussion regarding the inspection of the motorcycle by Claimant's Engineer. The WCJ concluded that a miscommunication occurred during these discussions regarding whether the motorcycle could be altered, with Legal Assistant asserting

that she had directed them not to alter the motorcycle and the Sergeant and Lieutenant indicating that they did not recall receiving such direction. Accordingly, there is substantial evidence in the record to support the WCJ's findings.

■ Moreover, in making this determination, the WCJ weighed the evidence, the reasonable inferences therefrom, and concluded that the evidence supported a conclusion different than that asserted by Claimant. Like credibility determinations, the weight given to evidence and the reasonable inferences deducible therefrom, is a question solely for the WCJ as the fact finder. *Elliott Turbomachinery Co. v. Workers' Compensation Appeal Board (Sandy)*, 898 A.2d 640, 647 (Pa.Cmwlth. 2006). Therefore, we will not reweigh the evidence as Claimant essentially requests this Court to do.[5]

■ Claimant also argues that Employer's subrogation right should be waived because of Legal Assistant's dereliction of duty, again citing *Thompson*. According to Claimant, Legal Assistant was directed to advise the Police Department not to alter the motorcycle before Claimant's Engineer could inspect the vehicle. Having failed to do so, Claimant asserts that Legal Assistant was derelict in her duties and,

4. "Substantial evidence is any relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt)*, 739 A.2d 1084, 1087 (Pa.Cmwlth.1999). Where substantial evidence supports the WCJ's findings of fact, those "findings are conclusive on appeal, despite the existence of contrary evidence." *Miller v. Workers' Compensation Appeal Board (Millard Refrigerated Services & Sentry Claims Service)*, 47 A.3d 206, 209 (Pa.Cmwlth.2012). In determining whether there is substantial evidence, we examine the record, and the reasonable inferences deducible therefrom, in the light most favorable to the party prevail-

ing before the fact finder. *Elliott Turbomachinery Co. v. Workers' Compensation Appeal Board (Sandy)*, 898 A.2d 640, 647 (Pa. Cmwlth.2006).

5. Claimant further asserts that the Board's alternative reasons for Legal Assistant's actions, i.e., "personal, emotional, or character flaws or weaknesses," likewise are not supported by substantial evidence. (Board Op. at 10.) However, because we conclude that the WCJ's findings are supported by substantial evidence, we will not address this additional assertion.

therefore, Employer should be deemed to have waived its subrogation right.

In *Thompson,* our Supreme Court indicated that, in *Curtis v. Simpson Chevrolet,* 348 F.Supp. 1062 (E.D.Pa.1972), which the Supreme Court had cited to support its holding regarding the absolute nature of subrogation under the Act, the District Court "suggested that a showing of bad faith *or dereliction of duty* might have altered its analysis." *Thompson,* 566 Pa. at 433, 781 A.2d at 1154 (citing *Curtis,* 348 F.Supp. at 1065 (emphasis added)).[6] However, the WCJ did not find that Legal Assistant was derelict in her duties. Instead, the WCJ found that there was a series of miscommunications between Legal Assistant, Sergeant, and Lieutenant regarding the motorcycle and that it was these miscommunications that led to the alteration of the motorcycle. Because the facts support the WCJ's finding that there was a series of miscommunications, and not that the Legal Assistant engaged in a dereliction of duty sufficient to alter the analysis, we are not persuaded by Claimant's argument. In short, as the Supreme Court has stated, it would be "unreasonable to permit an employer both to act in deliberate bad faith to subvert an employee's third party action, and then to demand subrogation arising from that action." *Thompson,* 566 Pa. at 433, 781 A.2d at 1154. However, the WCJ did not find "deliberate bad faith" in Employer's actions here and the facts, as presented and found, do not necessitate that conclusion.

Accordingly, the Board's Order is affirmed.

### ORDER

**NOW,** January 10, 2013, the Order of the Workers' Compensation Appeal Board entered in the above-captioned matter is **AFFIRMED.**

---

**6.** In *Curtis,* a claimant sought to strike an employer's subrogation claim against a third party settlement because the employer had an affirmative duty to assist the claimant in the third party action and did not do so. *Curtis,* 348 F.Supp. at 1064. The District Court concluded, however, that the claimant did not show that the employer was derelict in its duty where there was "no charge that [the employer's] counsel failed to assist plaintiff's counsel during [the] trial or deliberately withheld any information prior to [the] trial." *Id.* at 1065. Rather, the District Court indicated that "[a]t most, [claimant] has listed a series of incidents which might have been managed in a way that would have made trial preparation easier." *Id.*