IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christina English,                                  :
                    Petitioner                      :
                                                    :    No. 145 C.D. 2015
            v.                                       :
                                                    :    Submitted: July 2, 2015
Workers' Compensation Appeal                        :
Board (Gateway Ticketing),                          :
                    Respondent                      :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: August 14, 2015


            Christina English (Claimant) petitions for review of the January 30, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed the order of a workers' compensation judge (WCJ) denying her claim and review petitions and granting the termination petition filed by Gateway Ticketing (Employer). We affirm.

            Claimant worked as a marketing research analyst and a marketing communications specialist for Employer until the date of her termination on August 10, 2011. (Reproduced Record (R.R.) at 19a, 173a-74a, 180a-81a.) Employer issued a notice of compensation denial; however, Employer acknowledged, for medical purposes only, that on October 11, 2010, Claimant suffered a work-related injury in the nature of a cervical, thoracic, and left shoulder sprain and strain. (WCJ's Finding of Fact No. 1; R.R. at 1a.)

On December 1, 2011, Claimant filed a claim petition alleging total disability as of November 2, 2011,[1] due to the October 11, 2010 work injury. On January 20, 2012, Claimant filed a review petition seeking to include a thoracic spine strain, occipital neuralgia, myofascial strain, and left rhomboid strain to the description of her injury. Employer subsequently filed a termination petition, alleging that Claimant was fully recovered from her work injury as of February 29, 2012. (Board's op. at 1; R.R. at 15a-16a.) The petitions were assigned to a WCJ, who held multiple hearings.

Claimant testified that, on October 11, 2010, she began having persistent pain in her left shoulder and back that would give her intense headaches, as well as muscle spasms, while she was sitting at her work desk. Claimant testified that she initially sought medical treatment from Anthony M. Odell, D.C. (Dr. Odell), and then was treated by a Dr. Dreazen,[2] Employer's workers' compensation doctor, who examined Claimant, took x-rays, and set up a treatment plan that included physical therapy and medication. Claimant testified that she continued to work during this time and had difficulty attending treatment sessions. (R.R. at 21a-23a.)

Claimant stated that Dr. Dreazen referred her to Harold Joseph Einsig, M.D. (Dr. Einsig), who continues to treat her. Claimant explained that Dr. Einsig gave her multiple trigger point injections into her neck, head, shoulder, and back, as well as an injection in the back of her head to prevent headaches that worked for a period of time. Claimant stated that she informed Employer she needed a

---

[1] Claimant originally alleged full disability as of June 30, 2011, in her claim petition. (R.R. at 2a-3a.) However, Claimant amended her petition to allege full disability as of November 2, 2011, at the WCJ's January 19, 2012 hearing. (R.R. at 15a-16a.)

[2] Dr. Dreazen's full name is not evident in the record.

reconfigured work station in order to relieve her pain, and Employer accommodated her request. Claimant acknowledged that Employer also allowed her to work two days a week from home. (R.R. at 23a-24a, 36a-38a.)

Claimant testified that, although she was in physical pain and was also dealing with anxiety and depression issues, she continued to work until March 31, 2011, when her psychiatrist, Lisa Foster, Psy.D. (Dr. Foster), restricted her from working. Claimant treated with both Dr. Foster and Dr. Einsig while she was out from work. Claimant stated that Dr. Foster released her to return to work on June 15, 2011, and she resumed working that day. Claimant testified that when she returned to work, she had a new sedentary position and Employer provided her with accommodations, such as allowing her to start work at 10:00 a.m. instead of 9:30 a.m. and to work from home two days per week, as well as other physical adjustments to her work station. Claimant said that she worked for approximately one week until Dr. Foster again advised her to stop working. Claimant stated that she had not returned to work since June 2011 and that she continued to receive treatment from Dr. Einsig and Dr. Odell. (R.R. at 24a-26a, 45a-47a, 53a.)

Claimant testified that she is not physically capable of performing her regular job duties because she cannot sit at her desk for more than twenty minutes at a time. Claimant said that she continues to experience intense pain and muscle spasms in her shoulder area, pain in her left arm and back of her neck, and headaches. Claimant added that, if she places her arm behind her, she receives an electrical shock that runs down her arm to her fingers. (R.R. at 27a-29a.)

Dr. Einsig, who is board certified in physical medicine and rehabilitation, electrodiagnostic medicine, and athletic training, testified by way of deposition on March 26, 2012. Dr. Einsig testified that he saw Claimant on January

3

26, February 14, March 21, July 27, and December 22, 2011, and February 7 and March 6, 2012; he received a history of the work injury from Claimant, performed physical examinations, and provided treatment. (R.R. at 68a-69a, 73a-74a, 76a-78a, 90a, 92a-96a.)

Dr. Einsig stated that the results of his examinations were as follows: Claimant had tenderness in her spine and neck area; trigger points in the left pectoral muscle, with pain radiating through the shoulder and arms, the left levator scapulae muscle, the trapezius muscle, with pain radiating into her fingertips, and the left rhomboid muscle; intermittent numbness and tingling in her fingers; and occipital nuchal crest tenderness with muscle tension around the occipital nerve that caused irritation, inflammation, and occipital nerve headaches. He noted that the x-rays and MRIs taken of Claimant's cervical spine showed nothing significant. (R.R. at 69a-71a, 73a-74a, 77a, 92a-95a.)

Dr. Einsig said that he administered occipital nerve blocks and trigger point injections into Claimant's left pectoralis, trapezius levator scapular complex, and left rhomboid muscles. Dr. Einsig stated that he also recommended ice, stretching, muscle relaxers, and physical therapy. He noted that the occipital nerve blocks had worked well. (R.R. at 71a-74a, 77a-78a, 90a, 96a.) He testified that Claimant skipped her April 2011 appointment because she said that she was "feeling good." (R.R. at 76a.) Dr. Einsig added that he performed an October 25, 2011 EMG study, which showed irritated nerves and muscle twitching in Claimant's left rhomboid muscle. Dr. Einsig stated that he restricted Claimant from lifting over fifty pounds and working overhead continuously with her left arm. (R.R. at 83a-86a, 88a-89a.)

4

Dr. Einsig testified that he agreed with the description of the accepted work injury, but he would expand it to include repetitive muscle guarding due to the trigger points. He opined that Claimant developed a posterior left upper quarter dystonia, which is an ongoing repeated contraction state of the muscles responsive to pain, and that the work injury is the result of an improper work station. Dr. Einsig noted that he disagreed with the independent medical examination report of Richard G. Schmidt, M.D. (Dr. Schmidt), who concluded that Claimant was fully recovered from her work injury as of February 10, 2012. Dr. Einsig acknowledged that, if Employer had addressed all ergonomic issues at Claimant's work station, he would like to see Claimant attempt to do her job again. He stated that he never found Claimant fully disabled and disagreed with Claimant that she is fully disabled as of November 2, 2011. (R.R. at 98a-100a, 112a, 120a.)

Claimant also presented the May 2, 2012 deposition testimony of Dr. Odell, who testified that he first saw Claimant on October 7, 2010. Dr. Odell stated that Claimant gave a history of having neck and left shoulder pain after carrying objects around and sitting at her desk for eight hours per day. Dr. Odell testified that he examined Claimant and found that she was suffering from a sprain/strain of the neck with some radicular symptoms going into the left shoulder. He stated that Claimant had hypoesthesia on the left C7-T1 nerve distribution and some spasm and tenderness within the "bilateral traps, rhomboids, et cetera." (R.R. at 147a.)

Dr. Odell testified that he performed chiropractic manipulative therapy, muscle stimulation, cervical mechanical treatment, and an ultrasound on Claimant on October 11, 13, and 14, 2010. He stated that he saw Claimant again on November 3, 2011, at which time Claimant had similar complaints and headaches. Dr. Odell said that Claimant's symptoms were slightly worse than at the previous examination, and

5

he suggested that Claimant have chiropractic manipulative therapy, muscle stimulation, massage, cervical traction, and ultrasound. Dr. Odell noted that he has continued to treat Claimant sporadically since that visit. (R.R. at 147a-49a.)

Dr. Odell testified that Claimant had a follow-up evaluation on March 12, 2012, and Claimant had the same complaints. He said that the only differences between his November 3, 2011 and March 12, 2012 examinations were that Claimant no longer had radiculopathy but had severe headaches. Dr. Odell opined that, as of November 3, 2011, he would place restrictions on Claimant that include: no repetitive head or neck motions; no lifting overhead greater than twenty-five pounds; and be able to sit, stand, and lie down as needed. Dr. Odell acknowledged that he never documented any work restrictions and that Claimant could perform a majority of her job duties if she was able to be in a comfortable position and could take a break or change positions every fifteen or twenty minutes. (R.R. at 149a, 152a-53a.)

Dr. Odell testified that his diagnosis was cervical joint dysfunction; thoracic joint dysfunction; cervical radiating symptoms, which had severely decreased; and headaches. He acknowledged that Claimant was not fully disabled as a result of her work injury, but he disagreed with Dr. Schmidt's opinion that Claimant had fully recovered from her work injury as of February 10, 2012. (R.R. at 149a-50a, 156a.)

Ashley Witman (Witman), Employer's former Human Resources Generalist, testified that Claimant first reported her injury on October 11, 2010. She said that Employer provided Claimant with an ergonomic chair that was specifically postured and a podium so that Claimant could stand when needed. Witman stated that Employer also ordered a document holder, foot stool, keyboard tray, mouse tray, and headset for Claimant to make her work station more comfortable. Witman added

that Employer had Jonathan Sakowski (Sakowski), a physical therapist, perform an ergonomic evaluation of Claimant's work station on March 3, 2011, and that Sakowski only made minimal changes beyond Employer's adjustments to the work station. (R.R. at 167a-68a, 188a.)

Witman testified that Claimant stopped working for non-work-injury reasons on April 1, 2011, and returned to work on June 15, 2011. Witman stated that Claimant left work for a second time on June 22, 2011, because of work restrictions imposed by her psychiatrist. Witman testified that Claimant informed Employer via e-mail that her psychiatrist released her to resume working as of August 10, 2011. She said that Claimant did not show up for work on August 10, 2011. Witman added that Employer sent Claimant a letter notifying her of her termination if she did not show up for work for three consecutive days, and, when Claimant responded by informing Employer that she could not return to work indefinitely per her psychiatrist's recommendation, Employer discharged Claimant so that it could continue business as usual. Witman stated that Employer terminated Claimant's employment because Claimant was unable to return to work due to psychiatric issues. (R.R. at 171a-73a, 175a, 177a, 180a-81a.)

Dr. Schmidt, who is board certified in orthopedic surgery, testified by way of July 18, 2012 deposition. Dr. Schmidt stated that he performed an independent medical examination of Claimant on February 10, 2012, and Claimant provided a history of her work injury. He added that he reviewed Dr. Einsig's, Dr. Odell's, and Dr. Foster's medical records of Claimant, as well as the transcripts of Dr. Einsig's and Dr. Odell's depositions. (R.R. at 209a-10a.)

Dr. Schmidt testified that Claimant's only complaint was of discomfort in her left shoulder and that Claimant denied having any additional problems. Dr.

7

Schmidt further testified that Claimant had tenderness to palpation in her left mid-trapezial area; her neck, shoulders, and back were all normal; and he did not see any other evidence of an ongoing injury. Dr. Schmidt opined that, within a reasonable degree of medical certainty, Claimant had fully recovered and could return to work with no restrictions. In refuting Dr. Einsig's opinions, Dr. Schmidt added that: an EMG would not be used to find a trigger point, Claimant had no evidence of dystonia, Claimant never complained of headaches, and occipital neuralgia cannot be connected to a rhomboid strain. (R.R. at 211a-13a, 215a-23a.)

By decision and order dated February 25, 2013, the WCJ found the testimony of Claimant and Witman credible. The WCJ also found Dr. Schmidt's testimony that Claimant had fully recovered from her work injury to be credible, because his physical findings were consistent with those of Dr. Einsig and Dr. Odell. The WCJ noted that there was a lack of objective findings during Dr. Schmidt's, Dr. Einsig's, and Dr. Odell's examinations.

However, the WCJ rejected Dr. Einsig's opinion regarding the expansion of Claimant's work injury description and disability. The WCJ stated that while Dr. Einsig's opinions were based on his understanding that Claimant works at an ergonomically incorrect work station, he never testified that he had any knowledge of Claimant's original work station. The WCJ also noted that Dr. Einsig was aware of the changes made to Claimant's work station and never stated that Claimant was unable to return to her sedentary position after the changes had been made. The WCJ rejected Dr. Odell's testimony because he offered no understanding of the mechanics of Claimant's injury and did not explain any causal connection between the alleged injury and Claimant's alleged inability to perform her job duties.

8

Based on the credibility determinations, the WCJ concluded that Claimant failed to meet her burden of proving that she sustained additional injuries on October 11, 2010, or that her work injuries caused her to be totally disabled. The WCJ also concluded that Employer met its burden of proving that Claimant had fully recovered from her October 11, 2010 work injury as of February 10, 2012. Accordingly, the WCJ denied Claimant's claim and review petitions and granted Employer's termination petition. Claimant appealed to the Board.

By decision and order dated January 30, 2015, the Board determined that the WCJ did not err in denying Claimant's claim petition, because Claimant presented no credible medical evidence or testimony that her work injury prevented her from performing her sedentary job duties. The Board stated that neither Dr. Dreazen nor Dr. Einsig restricted Claimant's job duties and Claimant only stopped working for psychiatric reasons. The Board further determined that the WCJ did not err in denying Claimant's review petition, because, as the ultimate arbiter of credibility, the WCJ rejected Dr. Einsig's testimony while accepting Dr. Schmidt's testimony that Claimant had fully recovered from her work injury.

The Board also determined that the WCJ did not err in granting Employer's termination petition, because Dr. Schmidt's credible testimony that Claimant had fully recovered from her work injury constituted substantial evidence to support the WCJ's finding that Claimant had made a full recovery. The Board also concluded that the WCJ issued a reasoned decision, because the WCJ set forth concise findings of fact and explained the basis of his findings and credibility determinations. Accordingly, the Board affirmed the WCJ's order.

9

On appeal to this Court,[3] Claimant argues that the WCJ erred in denying Claimant's claim and review petitions and granting Employer's termination petition, because the WCJ's decision was inconsistent and not supported by substantial, competent evidence.

In a claim petition, the claimant bears the burden of proving all of the elements necessary to support an award, including the burden to establish the duration and extent of disability. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994), *appeal denied*, 663 A.2d 696 (Pa. 1995); *see also Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). To establish an entitlement to wage loss benefits, the claimant must prove by unequivocal medical evidence that the work injury resulted in a disability, which is a loss of earning power. *School District of Philadelphia v. Workers' Compensation Appeal Board (Lanier)*, 727 A.2d 1171, 1172-74 (Pa. Cmwlth. 1999). A claimant must establish that an injury occurred in the course of employment and is related thereto. *CPV Manufacturing Inc. v. Workers' Compensation Appeal Board (McGovern)*, 805 A.2d 653, 658 (Pa. Cmwlth. 2002).

A review petition is appropriate when a claimant seeks to amend a notice of compensation payable to reflect additional injuries, and it functions as a claim petition for that purpose. *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 592 (Pa. 2005). "When, as here, a claimant is seeking to amend [a notice of compensation payable] pursuant to

---

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

section 413(a) of the Workers' Compensation Act (Act),[4] [the claimant] has the burden to prove that [her] disability has increased and that the original work-related injury caused the amending disability." *Huddy v. Workers' Compensation Appeal Board (U.S. Air)*, 905 A.2d 589, 592 (Pa. Cmwlth. 2006).

An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased or that any current disability arises from a cause unrelated to the employee's work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from his work injuries. *Koszowski v. Workers' Compensation Appeal Board (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991). "The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012).

In making such a determination, this Court must review the medical expert's testimony as a whole. *Id.* "In a case where the claimant complains of continued pain, [the employer's] burden is met when [its] medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Where the employer

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

establishes that all disability related to the work injury has ceased, the employer is not required to establish work availability. *Laird v. Workers' Compensation Appeal Board (Michael Curran & Associates)*, 585 A.2d 602, 603 (Pa. Cmwlth. 1991).

In this case, Claimant essentially seeks to relitigate the facts. However, it is a fundamental principle of workers' compensation law that the WCJ is the final arbiter of witness credibility and evidentiary weight. *Hoang v. Workers' Compensation Appeal Board (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905, 907 n.7 (Pa. Cmwlth. 2012). The WCJ may accept or reject, in whole or in part, the testimony of any witness. *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994). A WCJ's credibility and evidentiary determinations are binding on appeal unless made arbitrarily and capriciously. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

The evidence, and the reasonable inferences deducible therefrom, must be viewed in the light most favorable to the prevailing party below. *Glass v. Workers' Compensation Appeal Board (City of Philadelphia)*, 61 A.3d 318, 325 n.4 (Pa. Cmwlth. 2013). For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal. *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004).

Here, the WCJ accepted Dr. Schmidt's testimony that Claimant had fully recovered from her work injury as of February 10, 2012, and specifically rejected the testimony of Dr. Einsig and Dr. Odell that Claimant had not fully recovered from her work injury or that Claimant's injury description should be expanded. Although

Claimant credibly testified regarding her complaints, as the WCJ found, she did not present any credible, unequivocal medical testimony that she further suffered from a thoracic spine strain, occipital neuralgia, myofascial strain, and left rhomboid strain as a result of her working conditions or that her work injury caused her to be fully disabled. *Korach*; *Lanier*.

Nevertheless, Claimant insists that the testimony of Dr. Einsig and Dr. Odell, as well as their findings during their examinations of Claimant, support Claimant's claim and review petitions. Notably, both Dr. Einsig and Dr. Odell disagreed with Claimant and testified that Claimant was not fully disabled as a result of her work injury. More important, the WCJ has already determined that their testimony was not credible, and these credibility determinations will not be disturbed on appeal. *Casne*.

Contrary to Claimant's assertions, Dr. Schmidt credibly and unequivocally testified that Claimant had fully recovered from her work injury as of February 10, 2012. Dr. Schmidt received a history of the work injury from Claimant; reviewed records from Dr. Einsig, Dr. Odell, and Dr. Foster; and performed a physical evaluation of Claimant. Dr. Schmidt stated that, within a reasonable degree of medical certainty, Claimant had fully recovered from her work injury. After reviewing Dr. Schmidt's testimony as a whole, we conclude it is competent.

Because the WCJ's decision is supported by substantial evidence, we conclude that the WCJ did not err in denying Claimant's claim and review petitions and granting Employer's termination petition.

13

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cohn Jubelirer did not participate in the decision in this case.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christina English,                  :
           Petitioner       :
                             :    No.  145 C.D. 2015
           v.               :
                             :
Workers' Compensation Appeal     :
Board (Gateway Ticketing),        :
           Respondent      :

## *ORDER*

AND NOW, this 14th day of August, 2015, the January 30, 2015 order of the Workers' Compensation Appeal Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge