# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherese Brown,                          :
                                        :
              Petitioner                :
                                        :
      v.                                : No. 646 C.D. 2020
                                        : Submitted: December 11, 2020
Workers' Compensation Appeal            :
Board (Main Line Hospitals, Inc.),      :
                                        :
              Respondent                :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  August 17, 2021


Sherese Brown (Claimant) petitions for review of the orders of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) that denied Claimant's claim petition alleging a partially disabling June 22, 2015 work-related injury (Claim Petition 1), and granted Claimant's claim petition alleging a totally and partially disabling November 30, 2016 work-related injury (Claim Petition 2) for the closed period of November 30, 2016, to January 27, 2017, pursuant to the provisions of the Workers' Compensation Act (Act).[1]  We affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Claimant filed Claim Petition 1 and Claim Petition 2 on April 5, 2018. In Claim Petition 1, Claimant alleged that she suffered an injury in the nature of a lumbar injury with broad-based disc protrusion at L4-5, in the scope and course of her employment as a patient care technician for Main Line Hospitals, Inc. (Employer), while assisting a patient who had suffered a stroke. With respect to this injury, on July 10, 2015, Employer issued a Form LIBC-501, Notice of Temporary Compensation Payable (NTCP),[2] acknowledging that Claimant

---

[2] Section 406.1(d)(1)-(2), (4)-(6) of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1(d) (1)-(2), (4)-(6), states, in relevant part:

> (d)(1) In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a[n NTCP] as prescribed by the [Department of Labor and Industry (department)].
>
> (2) The [NTCP] shall be sent to the claimant and a copy filed with the department and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the [NTCP]. The department shall, upon receipt of a[n NTCP], send a notice to the claimant informing the claimant that:
>
> (i) the payment of temporary compensation and the claimant's acceptance of that compensation does not mean the claimant's employer is accepting responsibility for the injury or that a compensation claim has been filed or commenced;
>
> (ii) the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation; and
>
> (iii) the claimant may need to file a claim petition in a timely fashion[,] enter into an agreement with his employer or receive a notice of compensation payable [(NCP)] from his employer to ensure continuation of compensation payments.

**(Footnote continued on next page…)**

2

sustained a work-related injury in the nature of a low back strain on June 22, 2015. Beginning on June 23, 2015, Employer paid Claimant weekly compensation benefits of $575.07. However, on August 21, 2015, Employer issued a Form LIBC-502, Notice Stopping Temporary Compensation (Notice Stopping NTCP), and a Form LIBC-496, Notice of Compensation Denial (NCD), within the 90-day period required by Section 406.1 of the Act, in which Employer denied that

---

**(continued…)**

\* \* \*

(4) Payments of temporary compensation may continue until such time as the employer decides to controvert the claim.

(5)(i) If the employer ceases making payments pursuant to a[n NTCP], a notice in the form prescribed by the department shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

(ii) This notice shall advise the claimant, that if the employer is ceasing payment of temporary compensation, that the payment of temporary compensation was not an admission of liability of the employer with respect to the injury subject to the [NTCP], and the employe must file a claim to establish the liability of the employer.

(iii) If the employer ceases making payments pursuant to a [NTCP], after complying with this clause, the employer and employe retain all the rights, defenses and obligations with regard to the claim subject to the [NTCP], and the payment of temporary compensation may not be used to support a claim for compensation . . . .

(6) If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the [NTCP] shall be converted to a[n NCP].

3

Claimant sustained a work-related low back strain on June 22, 2015. In Claim Petition 1, Claimant sought temporary partial disability benefits for the period of June 22, 2015, to July 13, 2015, in which she worked in a light-duty position with Employer and her wages were reduced from $19.50 per hour to $15.00 per hour.

In Claim Petition 2, Claimant alleged that she suffered an injury in the nature of a sprain of ligaments of the lumbar spine, strain of a muscle and tendon of the lower back, and lumbar radiculopathy at the left L4-5 nerve root in the course and scope of her employment with Employer, while caring for a patient. With respect to this injury, on December 14, 2016, Employer issued an NCD, denying that Claimant sustained a low back strain or tear during the course and scope of her employment on November 30, 2016. In Claim Petition 2, Claimant sought partial disability benefits for the period of November 30, 2016, and ongoing. Employer filed answers to the claim petitions denying the material allegations raised therein and hearings before the WCJ ensued.

In support of the claim petitions, Claimant testified and presented the records and reports of Mark Brown, D.C.; Christine Stallkamp, M.D.; Marc Belitsky, D.C.; and Kurt Maharay, D.C.; and the physical therapy notes of Bryn Mawr Rehab.

On June 25, 2019, the WCJ issued a decision disposing of the claim petitions in which he made the following relevant findings of fact. In general, the WCJ found all of Claimant's testimony to be credible. Reproduced Record (R.R.) at 179a-180a. However, "[n]otwithstanding [C]laimant's personal credibility, her testimony is given limited _weight_ as to the medical issues (_i.e._, diagnosis, causation, disability)." _Id._ at 180a (emphasis in original). The WCJ noted that Employer "has denied that either of these injuries occurred and [that its] initial

4

payment of temporary compensation on the claimed June 2015 injury cannot be deemed an admission of liability," citing Section 406.1(d)(5)(iii) of the Act. *Id.*

Specifically, with respect to the June 22, 2015 injury, the WCJ found credible Claimant's testimony that she sustained back pain while lifting a patient. R.R. at 180a. "However, no contemporaneous medical evidence was presented to establish the diagnosis, extent of treatment, or disability." *Id.* The first medical records that Claimant submitted in support were those of Dr. Brown, covering the period of January 29, 2016, through May 25, 2016, which the WCJ did not find to be "competent, credible or convincing as to the effect of the June 22, 2015 incident and the key issues of diagnosis, causation and disability." *Id.* Specifically, the WCJ found that "[t]his period of treatment commences seven months after the work incident and many months after [C]laimant had, by her own admission, been released to full duty and discharged by the panel physician." *Id.* The WCJ determined that "[t]he records are handwritten, sketchy, and virtually illegible," and that he could "discern no clear opinion as to diagnosis, causal relationship or disability." *Id.*

The WCJ also explained:

It is important to note that [C]laimant's [Claim Petition 1] alleges a disc protrusion at L4-5 caused by this injury. She is not alleging a simple lumbar strain/sprain. Claimant submitted the report of an [magnetic resonance imaging (MRI)] taken on February 17, 2016, which does indicate a broad-based protrusion eccentric to the right at L4-5. As noted above, Dr. Brown's comments about the MRI are indecipherable. There is no evidence that Dr. Belitsky ever saw the MRI or was even aware of it. Claimant's final treating chiropractor, Dr. Maharay, makes mention of the MRI and says he requested it, but apparently never followed up to obtain it. While both Dr. Belitsky and Dr. Maharay discuss the history of the June

5

> 2015 claimed injury, neither of them provides any clear-cut opinion as to its impact, or any opinion as to a diagnosis or disability stemming from it. There is no indication that they saw or considered the medical records contemporaneous to the June 2015 incident. Their periods of treatment were chronologically far removed from the incident: Belitsky's ran from December 2016, to January 2017; Maharay's from October 2017, to March 2018. There are also large gaps in time between the various courses of treatment . . . .

R.R. at 180a. The WCJ determined that "[a]ll of this makes causation very tenuous, considering that there is no initial opinion connecting the disc at L4-5 to the work injury causally, or to [C]laimant's symptoms." *Id.* at 181a.

With respect to the November 30, 2016 injury, the WCJ found credible "[C]laimant's testimony that she experienced back pain while helping a patient." R.R. at 181a. The WCJ also found credible Dr. Stallkamp's records "to establish that [C]laimant suffered a lumbar strain due to that incident." *Id.* The WCJ "accepted as competent and credible" the December 5, 2016 physical therapy note of Bryn Mawr Rehab "to establish that [C]laimant had lifting restrictions of ten pounds and that this would prevent her from performing her regular job." *Id.* The WCJ also accepted the December 7, 2016 physical therapy note as "competent and credible to establish that [C]laimant was still not ready to return to unrestricted work at that point." *Id.*

The WCJ also "found credible and convincing" the December 9, 2016 opinion of Dr. Belitsky that Claimant is "unable to perform [her] work duties today," and that "[h]is history clearly relates [C]laimant's lumbar pain to the November 30, 2016 injury." R.R. at 181a. The WCJ accepted Dr. Belitsky's December 12, 2016 release of Claimant to return to full duty as of December 15, 2016, "although she had exacerbations of her symptoms at various points." *Id.*

6

The WCJ also accepted Dr. Belitsky's January 26, 2017 Visit Notes stating that Claimant "has had no pain for 1-2 weeks," and that she had "no limitations at work or in ADLs (activities of daily living)," and that Dr. Belitsky discharged Claimant to a home exercise program. *Id.* The WCJ observed that "Claimant did not specifically rebut this history. The WCJ can discern no residuals of the November 30, 2016 lumbar strain based on this note." *Id.*

Finally, the WCJ found that "[t]he records of Dr. Maharay covering the period from October 30, 2017, through March 28, 2018, do not convince the WCJ that [C]laimant continued to have residuals of the November 30, 2016 injury during that time." R.R. at 181a. The WCJ explained that "[n]ine months had passed from the time [C]laimant was discharged by Dr. Belitsky and from the time [C]laimant left [Employer's] employ to begin what she described as an easier job as a phlebotomist." *Id.* at 181a-182a. The WCJ noted that "Dr. Maharay g[ave] no explanation for why [C]laimant would continue to suffer from a lumbar strain sustained in November 2016-nearly one year before." *Id.* at 182a.

Based on the foregoing, the WCJ found as fact: (1) Claimant did not establish that she sustained a work-related disc protrusion on June 22, 2015; (2) Claimant established that she sustained a work-related lumbar strain on November 30, 2016; (3) Claimant was disabled from her pre-injury job by the work-related injury from November 30, 2016, through December 14, 2016, based on the credible medical evidence; (4) Claimant is entitled to total disability benefits for any full days of work that she lost between November 30, 2016, through December 15, 2016; (5) Claimant is entitled to partial disability benefits for any days during that period on which she earned less than her pre-injury average weekly wage; and (6) the credible evidence does not establish that Claimant has suffered any residual

7

impairment from the November 30, 2016 work-related injury beyond January 27, 2017, the last day that she saw Dr. Belitsky, so Employer is entitled to a termination of benefits thereafter. R.R. at 182a-183a.

As a result, the WCJ concluded that Claimant failed to meet her burden of proof with respect to Claim Petition 1 and met her burden of proof, in part, with respect to Claim Petition 2. R.R. at 183a. Accordingly, the WCJ issued an order: (1) denying and dismissing Claim Petition 1; (2) granting Claim Petition 2 in part; (3) directing Employer to pay temporary total disability benefits for the full days of work lost between November 30, 2016, and December 14, 2016; (4) directing Employer to pay partial disability benefits for any partial days of wage loss between November 30, 2016, and December 14, 2016; (5) suspending wage loss benefits on and after December 15, 2016; and (6) terminating medical and wage loss benefits for the November 30, 2016 work-related injury on and after January 27, 2017. *Id.* at 184a.

On July 8, 2019, Claimant appealed the WCJ's decision to the Board. On June 24, 2020, the Board issued Opinions and Orders affirming the WCJ's decision. Claimant then filed the instant petition for review in this Court.[3]

On appeal, Claimant first contends that the Board erred in affirming the WCJ's decision that denied and dismissed Claim Petition 1, alleging a work-related injury in the nature of a broad-based disc protrusion at L4-5, because: (1) Claimant's unequivocal and unrebutted testimony, which was deemed credible by the WCJ, established that she suffered a work-related low back injury on June 22,

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of facts are supported by substantial evidence. *Berry v. Workmen's Compensation Appeal Board (United Minerals & Grain Corp.)*, 602 A.2d 415, 417 (Pa. Cmwlth. 1992).

8

2015; (2) Claimant's credible testimony established that she had no lower back problems prior to the work-related injury; (3) Claimant's credible testimony established that she experienced pain from a pull in her back 20 minutes after moving a patient to a chair, and worked light duty from June 22, 2015, to July 13, 2015, as a result of the injury at a rate that was $4.50 less per hour; and (4) Employer issued the NTCP acknowledging a lower back strain and sprain work-related injury, and did not issue the Notice Stopping NTCP until August 21, 2015, well after Claimant had returned to full duty.

This Court has explained:

> As *Innovative Spaces* [*v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51 (Pa. Cmwlth. 1994),] provides, in a claim proceeding the burden is on the claimant to establish a right to compensation and prove all necessary elements to support an award, including the burden to establish the duration and extent of disability. *Id.* at 54; *see also Inglis House* [*v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993)]. However, it is a fundamental principle of workers' compensation law that the WCJ is the final arbiter of witness credibility and evidentiary weight. *Hoang v. Workers' Compensation Appeal Board (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905, 909 n.7 (Pa. Cmwlth. 2012); *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, [637 A.2d 711, 714 (Pa. Cmwlth. 1994)]. The WCJ may accept or reject, in whole or in part, the testimony of any witness. *Id.* Moreover, the WCJ's fact-finding authority includes the authority to draw reasonable inferences from the evidence. *General Electric Company v. Workmen's Compensation Appeal Board (Valsamaki)*, [593 A.2d 921, 924 (Pa. Cmwlth. 1991)] ("[I]t is clearly within the [WCJ's] fact-finding province to draw reasonable inferences from the evidence." (*citing Oscar Mayer & Company v. Workmen's Compensation Appeal Board (Manzi)*, [442 A.2d 1238 (Pa. Cmwlth. 1982)])). A WCJ's credibility and evidentiary determinations are

binding on appeal unless made arbitrarily and capriciously. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). The evidence, and the reasonable inferences deducible therefrom, must be viewed in the light most favorable to the prevailing party below. *Glass v. Workers' Compensation Appeal Board (City of Philadelphia)*, 61 A.3d 318, 325 n.4 (Pa. Cmwlth. 2013).

*Pennsylvania Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Bonner)*, 85 A.3d 1109, 1114-15 (Pa. Cmwlth. 2014) (footnotes omitted).

As outlined above, with respect to the June 22, 2015 injury in the nature of a broad-based disc protrusion at L4-5, the WCJ found credible Claimant's testimony that she sustained back pain while lifting a patient; "[h]owever, no contemporaneous medical evidence was presented to establish the diagnosis, extent of treatment, or disability." R.R. at 180a. As a result, the WCJ determined that "[n]otwithstanding [C]laimant's personal credibility, her testimony is given limited <u>weight</u> as to the medical issues (*i.e.*, diagnosis, causation, disability)." *Id.* (emphasis in original).

In addition, after recounting all of the medical evidence that Claimant submitted in support of her burden of proof, which the WCJ discounted, the WCJ determined that "[a]ll of this makes causation very tenuous, considering that there is no initial opinion connecting the disc at L4-5 to the work injury causally, or to [C]laimant's symptoms." R.R. at 181a. We will not simply accede to Claimant's request to reweigh the evidence that she presented to the WCJ to sustain her burden of demonstrating the causal connection between the June 22, 2015 work incident and the broad-based disc protrusion at L4-5 injury that she allegedly sustained, and for which she seeks partial disability benefits in Claim Petition 1.

Moreover, pursuant to Section 406.1 of the Act, the Notice Stopping NTCP that Employer issued on August 21, 2015, well within the required 90-day period, stated, in relevant part:

> The payment of temporary compensation does not mean that [Employer] assumed responsibility for your injury. [Employer] and you retain all rights, defenses and obligations with regard to the claim. Further, the payment of temporary compensation may not be used to support a claim for benefits in a future proceeding.
>
> * * *
>
> [**X**] WE HAVE DECIDED NOT TO ACCEPT LIABILITY, AND ATTACHED IS A[N *NCD*]. IF YOU BELIEVE YOU SUFFERED A WORK-RELATED INJURY, YOU WILL BE REQUIRED TO FILE A CLAIM PETITION WITH THE WORKERS' COMPENSATION OFFICE OF ADJUDICATION IN ORDER TO PROTECT YOUR FUTURE RIGHTS.

Certified Record Item 22 at 5 (emphasis in original). As a result, Claimant may not rely upon Employer's issuance of the NTCP to sustain her burden of proof with respect to Claim Petition 1, *i.e.*, that she suffered an injury in the nature of a broad-based disc protrusion at L4-5 on June 22, 2015, while in the course and scope of her employment with Employer. *See* Section 406.1(d)(5)(iii) of the Act, 77 P.S. §717.1(d)(5)(iii) ("[A]fter complying with this clause, the employer and employe retain all the rights, defenses and obligations with regard to the claim subject to the [NTCP], and the payment of temporary compensation may not be used to support a claim for compensation . . . ."). In sum, contrary to Claimant's assertion, the Board did not err in affirming the WCJ's decision denying Claim Petition 1 based on Claimant's failure to sustain her burden of proving her entitlement to temporary partial disability benefits under the Act.

11

Finally, Claimant contends that the Board erred in affirming the WCJ's decision granting Claim Petition 2 for a closed period, terminating her total and partial disability benefits as of January 27, 2017. Claimant argues that Dr. Belitsky's records do not demonstrate that she was fully recovered from her November 30, 2016 work-related injury as of January 27, 2017, but they do demonstrate that she suffered from ongoing residual disability. Claimant asserts that Dr. Belitsky merely opined that Claimant has reached "maximum chiropractic improvement" as of January 27, 2017, which is qualitatively different from a full recovery and does not support the termination of her benefits.

"[A] WCJ is authorized, when considering a claim petition, to award compensation for a work-related injury and, in addition, to terminate benefits as of the date the disability ceased, although a termination petition has not been filed, if the claimant has not carried her burden of proof to establish a continuing disability." *Ohm v. Workmen's Compensation Appeal Board (Caloric Corp.)*, 663 A.2d 883, 886 (Pa. Cmwlth. 1995). With respect to the termination of disability benefits, the Pennsylvania Supreme Court has explained that a medical expert is not required to use the words "full recovery" to support such a termination:

> We emphasize that the failure of the employer's expert to employ these "magic words" is not fatal to the employer's claim. Instead, the expert testimony must be reviewed in its entirety to determine whether the conclusions reached are sufficient to warrant termination of benefits. *See Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.)*, [571 A.2d 1108 (Pa. Cmwlth. 1990)] (physician need not say magic words that claimant was "fully recovered"; *sufficient that physician testified to releasing claimant to work without restrictions because work-related injury was resolved*).

12

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 n.3 (Pa. 1997) (emphasis added).

Dr. Belitsky's January 26, 2017 Visit Notes that Claimant submitted to the WCJ in support of Claim Petition 2 states, in relevant part:

> **Subjective**
> **Mid Back Pain:** Initially VAS rated 3
> The symptom was described as doing well. The condition is aggravated by no limitations, and relief is experienced with chiropractic care.
> Patient has very favorable response to treatment. ***No pain past 1-2 weeks. No limitations in** [**activities of daily living**] **or work restrictions**.
>
> **Lower Back Pain:** Initially VAS rated 3
> The symptom was described as no pain and doing well. The condition is relieved by chiropractic care.
>
> * * *
>
> **Neurological Examination**
> Myotome evaluation revealed no weakness in the lower extremity.
>
> **Prognosis/Diagnosis**
> The cause of the patient's condition was a work[-]related injury. The patient has reached maximum chiropractic improvement[.] The patient's prognosis is excellent[.] Diagnosis: S33.5XXA Sprain of ligaments of lumbar spine, initial encounter – ***resolved*** S39.012A Strain of muscle, fascia and tendon of lower back, init – ***resolved*** M62.830 Muscle spasm of back – ***resolved*** M64.5 Low back pain – ***resolved*** M99.03 Segmental and somatic dysfunction of lumbar region[.]
>
> **Assessment**
> Diagnoses as of the examination on 1/26/2017:
> S33.5XXA Sprain of ligaments of lumbar spine, initial encounter

S39.012A Strain of muscle, facia and tendon of lower back, init
M62.830 Muscle spasm of back
M54.5 Low back pain
M99.03 Segmental and somatic dysfunction of lumbar region

The patient has responded favorably to treatment and has reached [her] treatment goals. [*She is*] *experiencing no limitations in job responsibilities or* [*activities of daily living*]. [She has] *also* reached maximum [c]hiropractic improvement *with no limitations or permanent impairments and therefore* [*she*] *will be released from care*.

R.R. at 50a-51a (emphasis added).

Based on the foregoing, and contrary to Claimant's assertion, Dr. Belitsky's January 26, 2017 Visit Notes clearly supports the WCJ's determination that "[t]he evidence does not establish that [C]laimant suffered residuals of the November 30, 2016 work injury beyond January 27, 2017, the last date she saw Dr. Belitsky. Accordingly, [Employer] is entitled to a termination of benefits thereafter." R.R. at 183a. As a result, the Board did not err in affirming the WCJ's decision awarding Claimant disability benefits for a closed period and terminating those benefits as of January 27, 2017.

Accordingly, the Board's orders are affirmed.

_____
MICHAEL H. WOJCIK, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherese Brown,                              :
                                            :
                        Petitioner          :
                                            :
          v.                                : No. 646 C.D. 2020
                                            :
Workers' Compensation Appeal                :
Board (Main Line Hospitals, Inc.),          :
                                            :
                        Respondent          :

# **O R D E R**

AND NOW, this 17ᵗʰ day of August, 2021, the orders of the Workers'

Compensation Appeal Board dated June 24, 2020, are AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge